St. Louis, Brownsville & Mexican Railway Company v. J. O. West and Wife.

Decided November 2, 1910.

**1.—Practice on Appeal—Charge—Invited Error.**

An appellant who in the court below requested and induced the court to give a charge upon a certain issue can not on appeal complain of the submission of said issue to the jury on the ground that the evidence did not warrant the submission of the same.

**2.—Overflow—Permanent Injury—Pleading—Proof.**

In an action for damage to land by reason of overflow, the plaintiff having alleged only permanent injury, the defendant was entitled to have the jury expressly instructed that the plaintiff could not recover in the present suit for any temporary injury to the land; and this right was substantial in view of the fact that the evidence was conflicting as to whether the injury was permanent or temporary.

**3.—Charge—Error of Omission—Practice.**

The failure of the trial court to define "permanent injury" would be an error of omission, if error at all, and an appellant can not complain of the same in the absence of a refusal of the court to give a requested charge supplying the omission.

**4.—Overflow of Land—Measure of Damage.**

In an action for damages for permanent injury to land by overflow, the measure of damage is the difference in the market value of the land immediately

before the erection of the obstruction which caused the overflow, and its value when the permanent injury is finally accomplished by the particular cause; and this without reference to any other cause or causes which might have affected the value of the land in the meantime.

### 5.—Same—Tramping of Cattle—Proximate Cause of Injury.

When land is damaged by overflow, the fact that the damage is augmented by the tramping thereon of cattle, will not affect plaintiff's right to recover for all the damage, even though the allegation was that the land was damaged by overflow. The overflow was the proximate cause of plaintiff's loss.

### 6.—Railroad—No Title to Right of Way—Trespasser.

When a railroad company owns no title to the land upon which its road is built, it occupies the position of a trespasser towards the owner of the land, and is liable accordingly for injuries caused to the owner by its presence on the land.

Appeal from the District Court of Victoria County. Tried below before Hon. James C. Wilson.

*Claude Pollard, C. F. Carsner* and *R. J. McMillan,* for appellant.

*Fly & Daniel,* for appellees.

JAMES, Chief Justice.—Appellees' second amended petition alleged that they were, when appellant's road was built, about May, 1906, and are now, owners of a pasture of about 8000 acres in Victoria County, using same for grazing of livestock. That the railroad was built through the entire length of plaintiffs' land, from west to east covering a distance of about three and one-half miles. That upon said land, where defendant's line intersects the line of the G. H. & S. A. Ry. Co., defendant erected its station house, and about 300 yards east of said station house and just north of its track and still upon plaintiffs' land and within their enclosure, it constructed its section house and dug a well and erected thereat a large reservoir or tank for use in supplying water to its locomotives, and dug a ditch along its right of way on the north side for the drainage of surface waters, which had the effect of carrying off the storm or surface waters from plaintiffs' land north of the track, which otherwise have been banked up on plaintiffs' lands by reason of the track and road bed being higher than the surrounding country.

That in the construction of the foundation for said tank or reservoir defendant filled up its ditch on the north side of its track, and covered the same with sand to shed the water away from the reservoir, completely obstructing the channel of said ditch, which was done in the late spring or early summer of 1906, and at the same time said railway was built through plaintiffs' pasture. That said construction was unnecessary, as defendant could easily and without additional expense have placed said tank and foundation upon either side of said ditch, or could have more easily have opened the ditch around said foundation, and thus have permitted the storm waters or waters dropping from the tank to pass off.

That previous to this construction, storm or surface water falling upon plaintiffs' land to the north and northwest found their way through natural drainage courses into Placedo Creek, about a mile southeast of where the tank was constructed; and after such construction said waters would have flowed through a ditch on the north side of defendant's track to a point some hundred feet east of said tank, and thence through a culvert underneath the track, and thence through a ditch on the south side of the track into said creek, but for the acts above mentioned, which caused said waters to be backed upon and to spread out over about 500 acres of plaintiffs' land adjoining.

That at various times since, and after every rain storm, which come on an average of every four or six weeks approximately, said waters have covered the said lands, and have destroyed the grass and have permanently injured plaintiffs' lands in their market value. That the growing grass was thereby destroyed for three successive years, towit, 1906, 1907 and 1908, which said grass was reasonably worth $500 per year. That said 500 acres were submerged or partially submerged by said waters so banked upon it, and which would remain upon it for many days following each rain, having no way to flow off, until evaporated. That this constantly recurring submerging of said land and the retention of such water on the land until it had evaporated, has at this time and by the fall of 1908 caused the land to be permanently injured by rendering the same lifeless and unproductive, and damaged the same in its market value in the sum of $5 per acre.

The petition also alleged that the tank was faultily constructed and that water constantly poured from the same and filled said railway ditch just west of said tank, and that in dry weather the ditch was thereby constantly supplied with water from the reservoir, producing a bog hole about 300 yards long and about 75 feet wide, extending in width partly on defendant's right-of-way and partly into plaintiffs' land; and that defendant fenced its right-of-way in an easterly direction for about a mile, but did not fence that portion upon which it had created and maintained said bog hole, but left the same open and accessible to plaintiffs' cattle on both sides of the right-of-way; that it was necessary for said cattle to cross from one side of plaintiffs' lands to the other and in so doing were compelled to cross and become bogged in said bog hole, and in consequence 200 head of plaintiffs' cattle were lost to plaintiff, of the market value of $15 per head.

Following the above allegations the petition closes with the following allegations:

"Plaintiffs would further show unto the court, that immediately west of the intersection of defendant's railway with the railway of the Galveston, Harrisburg & San Antonio Railway Company as above described, and on plaintiffs' grazing lands, being the same pasture hereinfore described, the defendant company on constructing its said road bed, railway grade and track, at the time hereinfore stated, failed to construct and provide proper outlets and openings through its track, and

the necessary culverts or sluices, as the natural lay of the land requires for the necessary drainage thereof, in order to enable the storm or surface waters falling upon plaintiffs' lands adjoining and lying to the northward of defendant company's railway track to flow off through its original and natural drains and outlets; that defendant company's grade and road bed, by reason of being raised above the level of the surrounding country, the natural drainage of which was and is in a southeasterly direction into said Placedo Creek, had banked up and dammed said storm and surface waters which continually, since the building of defendant company's line of railway about May, 1906, and on an average of every four or six weeks since then, has been caused to spread out and stand upon plaintiffs' land, covering an area of about 500 acres adjacent to defendant company's railway track immediately within the triangle formed by the intersection of said two railways, and to the westward of the said Galveston, Harrisburg & San Antonio Railway Company's track and there remain until evaporated, which has destroyed plaintiffs' annual crop of grass for three consecutive years, towit, the years of 1906, 1907 and 1908, which said grass was of the reasonable value of $500 per year, or $1500.

"Plaintiffs say that by reason of the defendant company's negligence and carelessness in failing to construct the necessary culverts or sluices as the natural lay of the land requires for the necessary drainage of the surface or storm waters therefrom, that 500 acres of said land last described has now become permanently injured, which said permanent injury was completed before the fall of the year 1908, and that said land has thereby become lifeless and unproductive, and has been damaged in its market value at said last named time and place by reason of said permanent injury to the sum of $5 per acre, or $2500.

"(2) In nowise waiving their right of recovery under the foregoing count of this petition, under their allegations of damage to the market value of their property, but still insisting thereon, these plaintiffs would further show to the court as follows, towit: That they here adopt and specially reaffirm as fully as if again set out at this place, each and every averment of facts contained in said foregoing count hereof, and say further, that if plaintiffs are mistaken in their belief and averment that their said lands were damaged in their market value in the sum of $5 per acre, and that their said cattle, which were lost through the negligence and carelessness of defendant company, were of the reasonable market value of $15 per head, then they aver the fact to be, and here state, that by reason of the negligence and carelessness of defendant company, as hereinbefore fully set out, that their said lands were, before said injury complained of, of a rich and productive quality and reasonably well drained, and by reason of the injury complained of said lands were permanently injured, and damaged in their intrinsic value in the sum of $5 per acre on 1000 acres, or $5000; and that their said cattle so lost by reason of defendant company's negligence and care-

lessness were reasonably worth the sum of $15 per head, which plaintiffs aver was their intrinsic value at the time and times they were so lost.

"Plaintiffs sue and pray as they did in their original petition, and that upon final hearing they have judgment for a writ of injunction, restraining defendant company from further damming up said waters upon their lands, and that they have judgment for their said damage, $9000, for costs of suit, and such other and further relief, special and general, in law and in equity, that they may be justly entitled to, and as in duty bound will ever pray."

The answer was by demurrers, general denial, contributory negligence of plaintiffs in failing to dig a ditch draining the bog hole and in failing to fence off their land from access to same. That defendant had sufficient openings in its embankments to allow the proper passage of water; and asked that the injunction be denied; and that plaintiffs' land was naturally low land and that 'it overflowed regardless of the railroad track; and that plaintiffs were not damaged as alleged by loss of cattle; and certain offsets in reference to the cattle.

The above statement substantially explains the nature of the plaintiffs' case and the issues.

There was a verdict for plaintiffs for $900 permanent damage to the value of the land; $30 for destruction to the crop of grass of 1907, and $484 for forty head of cattle, making the total of $1410.

The first assignment of error states that the evidence totally fails to show that plaintiffs lands had suffered any permanent injury. There was some testimony of a permanent injury to the grass growing capacity of the land, in accordance with the rule as stated in Ft. Worth & N. O. Ry. v. Wallace, 74 Texas, 581. Apart from this, however, the record shows that appellant requested charges submitting the issue of permanent damage to the land, notably the eleventh request which was given. For this reason the submission of the issue by the court can not on this appeal be complained of by appellant as not supported by testimony. Poindexter v. Receiver Kirby Lumber Co., 101 Texas, 323.

The second assignment of error complains of the refusal of two charges. One of these, if given, would have amounted to mere repetition of what was in the general charge. The other reads as follows: "You are instructed that unless you believe that the lands of the plaintiffs have been permanently injured by rendering same less productive and fertile, you will allow no damages for any injury that may have been done to their land. In this connection you will not consider the fact, if it be a fact, that the land is liable to be again overflowed, nor will you consider any temporary damage that may have been done to the land, if any such damage has been sustained."

We think defendant was entitled to this instruction. Plaintiffs' case as alleged was that the land had been permanently injured by rendering the same lifeless and unproductive. The court in its charge, in general terms, authorized a verdict for damage to the land if it was permanently injured. Defendant had the right to have this elaborated and explained

to conform to what the petition particularly claimed and to what defendant contended. This was more certainly so, inasmuch as there was some testimony introduced by plaintiff tending to show that the land had sustained injury by reason of its having been rendered unfit for a townsite. The action was for permanent injury to the land by rendering it unproductive, and this allegation would support a case of any injury in that respect of a permanent character. The testimony tended to show an injury to the productiveness of the land in respect to grass, that was permanent in its character, according to Ft. Worth & N. O. Ry. v. Wallace, 74 Texas, 581. There was also evidence from which the jury would have been authorized to find this injury was not of a permanent character. This was a question for the jury to pass upon and decide, and defendant's theory being that it was temporary instead of permanent, defendant was clearly entitled to a direct and affirmative presentation of this defense. Texas Trunk Ry. Co. v. Ayres, 83 Texas, 268. The requested charge did not embody error in asking that the jury were not to consider future overflows, nor temporary damage to the land. Plaintiffs had seen proper to confine their demand to the assertion of permanent injury to the land, for which there was a certain measure of damages, and said nothing about a mere temporary injury, which involved a different method of ascertainment, and they must be held entitled to recover according to their allegations, that is, for permanent injury to the land, and no other. Gulf, C. & S. F. Ry. v. Frederickson, 19 S. W., 125. There is nothing whatever in the requested charge that was on the weight of the evidence.

There was no affirmative error in the failure of the court to define permanent injury, and no definition was requested. This disposes of the third assignment of error.

The fourth assignment develops no error. The failure of the court to submit the matter of defendant's liability with reference to land in the triangle west of the G., H. & S. A. tracks, was advantageous to, and cannot be complained of by, appellant. With regard to the land east of the G., H. & S. A. tracks and adjacent to the reservoir, there was no error in submitting defendant's liability in respect thereto, for the reason, as we believe, the allegations of the petition taken in their entirety were comprehensive enough to present a case of the overflowing of plaintiffs' lands by reason of the railway grade as well as by reason of the obstructing tank, and the charge and the testimony were sufficient to warrant a recovery for both or either of such causes. This view of the pleading and charge, however, is not perfectly satisfactory to us, and upon another trial the propriety of amendment is suggested. This disposes also of the fifth assignment.

In view of a reversal of the judgment it is of no use to discuss the sixth assignment of error, which is that certain hypothetical questions were not based upon testimony in the case.

There is one proposition under the seventh assignment of error which has not yet been referred to in this opinion. It is an attack on the charge

on the measure of damages for permanent injury to the land. The correct rule is the difference in the market value of the land immediately before the obstruction, and its value when the permanent damage was finally accomplished due to the particular cause. The petition distinctly alleges that the permanent injury was completed by the fall of 1908. Accordingly the difference in values should have been referred to that time, and not to the time of trial which occurred some years later. Trinity & Sabine Ry. Co. v. Schofield, 72 Texas, 496; St. Louis S. W. Ry. v. Terhune, 94 S. W., 381. But as the evidence went to show that the market value of the land had risen, instead of decreased, the submission, as made, was favorable to defendant. International & G. N. Ry. Co. v. Bell, 62 Texas Civ. App., 117 (130 S. W., 638).

The court in its charge told the jury to take the value before and the value after, "under the same conditions, without reference to the fact, if any, that the value of said land has been increased or diminished by any other cause." We think this was not an improper addition to make in connection with the rule.

The eighth assignment of error presents the proposition that plaintiffs, having alleged that the injury to their grass was caused by overflow, were not entitled to prove that the injury was caused or augmented by cattle tramping the grass when it was wet. The land overflowed was a pasture for cattle, and the fact that cattle in the pasture tramped the grass while wet, did not do away with the overflow as the proximate cause of plaintiffs' loss.

The ninth assignment complains of the overruling of defendant's exceptions to the amended petition. Appellant's brief undertakes in this connection to detail the testimony, which is wholly immaterial to the ruling upon the demurrers. The petition contained an allegation that the bog hole from which plaintiffs sustained loss of cattle, extended over into their pasture. With this allegation in the pleading it was not error to overrule the exceptions.

In view of another trial it is proper for us to express our view concerning a matter referred to by appellant under this assignment. It appears from the record that the defendant had no title to the land embraced in the right-of-way through plaintiffs' pasture until February 21, 1907, when they obtained a conveyance thereof from plaintiffs. Up to that time it would appear that the railway company was a trespasser in the pasture. If so, the maintenance of the bog hole upon its right-of-way was the act of a trespasser on plaintiffs' land, and it would be liable for the loss of cattle caused plaintiffs by it. But after it acquired title or permission it would not be liable for cattle getting into it upon the right-of-way at a station. The decision of the Supreme Court in Dobbins v. M., K. & T. Ry. Co., 91 Texas, 60, appears to be conclusive of this question.

The tenth, twelfth, thirteenth, fourteenth and seventeenth assignments, which present questions affecting the charges, are overruled. We

also overrule the eleventh, fifteenth and sixteenth assignments.  Reversed and remanded.

*Reversed and remanded.*