ABNEY v. ROBERTS et al. (No. 5270.)

(Court of Civil Appeals of Texas. Austin. Feb. 25, 1914. Rehearing Denied April 15, 1914.)

1. VENDOR AND PURCHASER (§ 351*)—BREACH BY VENDOR—MEASURE OF DAMAGES.

A contract by a vendor of land, who also owned a milldam and water power, to erect and maintain so long as the purchaser should demand an irrigation pump of sufficient capacity to deliver water for irrigation purposes and the necessary casing to extend from the pump to the second bank of the river and to furnish water for irrigating the land at an agreed price per acre, was not merely an agreement to furnish water, but called for a permanent and extensive improvement of the land, and for a breach thereof the purchaser was entitled to recover the difference between the value of the property as it would be if the contract had been performed and its value upon the vendor's failure to perform.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1017, 1047–1058; Dec. Dig. § 351.*]

2. CONTRACTS (§ 10*)—SALE OF LAND—AGREEMENT TO FURNISH WATER—MUTUALITY.

Where a vendor, as a part of the transaction and as a part of the consideration for the purchase, agreed to erect and maintain at a milldam owned by him an irrigation pump, to connect therewith casing reaching to the second bank of the river, and to furnish water for irrigation purposes at a specified price per acre, and the purchaser agreed to furnish the necessary casing to extend the piping from the bank to the upland, to construct and maintain a reservoir, and to permit the vendor by pipe or ditch to convey any excess of water to the lands of other proprietors, and also agreed that the dam might be raised so as to overflow certain of his land, the agreement of the vendor to erect a pump and furnish water was not unilateral and unenforceable.

[Ed. Note.—For other cases see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

3. LIENS (§ 10*)—SALE OF LAND—BREACH OF CONTRACT—DAMAGES—RIGHT OF PURCHASER TO LIEN.

Where a vendor of land, purchased by plaintiff, which vendor also owned a milldam and water power, agreed to erect and maintain an irrigation pump and casing connected therewith and to furnish water for irrigation purposes

at an agreed price per acre and subsequently conveyed the dam property to persons who assumed the performance of the contract with plaintiff, plaintiff had no lien, legal or equitable, on the dam property or his damages from the nonperformance of the contract.

[Ed. Note.—For other cases, see Liens, Cent. Dig. §§ 5, 5½, 6; Dec. Dig. § 10.*]

4. VENUE (§ 22*)—RESIDENCE OF DEFENDANTS —CODEFENDANTS.

Where an action was brought in the county of the residence of one of the defendants, the other defendants' plea of privilege to be sued in the county of their residence was properly overruled.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 35–37; Dec. Dig. § 22.*]

Appeal from District Court, Lampasas County; John D. Robinson, Judge.

Action by W. B. Abney against P. Z. Davis, Ingham S. Roberts, and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

J. C. Abney, M. M. White, and Matthews & Browning, all of Lampasas, for appellant. John B. Warren, of Houston, for appellees.

### Statement of the Case.

KEY, C. J. The following statement of the nature and result of this suit contained in appellant's brief is conceded to be correct: "This suit was instituted by the plaintiff, W. B. Abney, on February 21, 1912, against the defendants P. Z. Davis, Ingham S. Roberts, B. F. Frymier, Jr., and B. F. Frymier, Sr.; the object of the suit being to recover damages from defendants by reason of their failure to erect and maintain an irrigating plant and furnish water for irrigation purposes to plaintiff under a contract between plaintiff and P. Z. Davis made on May 21, 1906, the plaintiff alleging that the other defendants had assumed to carry out said contract made with said Davis, and had become liable to plaintiff for all damages sustained by him by reason of said contract not being carried out. Plaintiff's cause of action is duly set forth in his second amended original petition filed on the 7th day of April, 1913, and in which petition the plaintiff alleged and asked the foreclosure of a lien on certain lands, which lien he claimed to hold as security for the performance of said contract. The defendants Ingham S. Roberts, B. F. Frymier, Jr., and B. F. Frymier, Sr., on said 7th day of April, 1913, filed their second amended original answer, which contained seven exceptions or demurrers to plaintiff's said amended original petition; one of them being a general exception. The defendant Davis by his answer admitted execution of the contract sued on and asked for judgment over against his codefendants in the event judgment was rendered against him in favor of plaintiff; said Davis alleging that, as part consideration for his conveyance of certain land described in plaintiff's second amended petition, his codefendants had as-sumed performance of the contract sued on, and prays for the establishment and foreclosure of a lien on the land conveyed by him to Frymier for the amount of such judgment. On April 8, 1913, the court sustained all of said exceptions of defendants Ingham S. Roberts, B. F. Frymier, Jr., and B. F. Frymier, Sr., to which ruling of the court the plaintiff excepted and declined to amend. Thereupon the court rendered judgment dismissing plaintiff's suit and adjudged that all the defendants go hence without day and recover of plaintiff all costs. The plaintiff then excepted to said rulings and judgment of the court, gave notice of appeal to this court, and on the 5th day of May, 1913, perfected his appeal by filing his appeal bond and assignments of error."

The contract referred to in the plaintiff's petition reads as follows: "The State of Texas, Lampasas County. This agreement made and entered into by and between P. Z. Davis and W. B. Abney of Lampasas county, Texas, witnesseth: First. That said P. Z. Davis as owner of the Chadwick Mill property, dam and water power, situated, part on about 26½ acres of the Calvin Baker survey in S. W. corner of Mills county, Texas, with dam extending across the Colorado river, and including 12 acres out of the Phillip Bulger and Jas. H. Baker surveys in San Saba county, hereinafter more fully described, does hereby forever grant unto said W. B. Abney, his heirs and assigns, the exclusive right to use and enjoy said strip of land off said Bulger and Baker surveys, and all grass and pecans growing thereon, leaving all timber remaining standing thereon, such use, however, not to interfere in any manner with the right especially reserved by said Davis to use said strip in any manner beneficial to said Davis in maintaining and using his dam and water power, including the right of raising said dam higher, and thereby back water on said land. Second. The said P. Z. Davis hereby grants to W. B. Abney, his heirs and assigns, the right to construct and forever maintain at and below said dam a hydraulic ram to receive water from said dam so as to produce the power necessary to convey water for irrigation purposes from said dam to the lands conveyed by P. Z. Davis this day to said W. B. Abney out of said Phillip Bulger and Jas. H. Baker surveys in San Saba county, Texas, and the right to take the water from the Colorado river for the irrigation of said lands. Third. P. Z. Davis shall on or before January 1, 1907, erect and place in a suitable and proper place on the Colorado river at said Chadwick milldam, an irrigation pump of sufficient capacity to deliver not less than 350 gallons of water per minute on the upland now being grubbed on the Phillip Bulger and Jas. H. Baker surveys on west side of Colorado river, being the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

same land conveyed by P. Z. Davis to W. B. Abney on May 21, 1906, and said Davis shall connect with said pump enough iron casing, inside measure 5⅝ inches in diameter, and extend such casing to the second bank of the Colorado river, on said west side of the land of W. B. Abney, and shall furnish the necessary power to lift said water to said upland of W. B. Abney. The said W. B. Abney on his part agreeing to furnish the necessary casing of same size and character and extend such piping from said second bank of Colorado river to said upland. The said Davis hereby agreeing and binding himself to maintain said pump and power and casing connections to the second bank as long as the said Abney, his heirs and assigns shall demand the same 'and the said Abney agreeing and binding himself, his heirs and assigns to maintain said casing from said second bank to his upland above described, as long as said Davis, his heirs and assigns shall demand the same,' and said Davis shall furnish to said Abney, water through said pump and casing to irrigate all or any portion of said land purchased from P. Z. Davis, as aforesaid, whenever demanded by said Abney, his heirs and assigns, at the price of $1.66⅔ per acre of land irrigated, payable at the end of each year irrigated. Any surplus water not used by said Abney, the said Davis shall have the right to conduct by pipe or ditch connecting with the casing laid by Abney, so as not to interfere with the tillable and cultivated land of said Abney, and deliver same to any proprietor south of said Abney, and such excess of water shall be the property of P. Z. Davis, his heirs and assigns. The said Abney is to construct and maintain a dirt reservoir, not less than 50x100 feet, with wall not less than eight feet at base, and a height of five feet from level of land, said walls to be built out of the excavations from said reservoir, in which reservoir water shall be pumped by said Davis through the casing furnished by Abney to connect at second bank with the casing furnished by said Davis, and the said water shall be on storage for irrigation of the land of said Abney, and any excess in said reservoir may be used by Davis on lands of lower proprietors, through a single ditch leading from reservoir. Fourth. The said W. B. Abney, as owner of the 101 acres of Jas. H. Baker survey in San Saba county, described in deed from Lee Oliver to P. Z. Davis, dated May 12, 1906, and conveyed by P. Z. Davis to W. B. Abney this day, hereby grants to P. Z. Davis, his heirs and assigns, the right and privilege of raising said dam at Chadwick Mill, as high as he or they may see fit to, provided only, that same shall not be raised so that in heavy rises in said river, the additional rise in the dam will have the effect of overflowing the land on the upper or second bank of land owned by said Abney, or any part of the land on said upper or second bank. Fifth. The land on west bank of Colorado river referred to in item one of this contract, in which Davis reserves the right to use same in maintaining and using his dam and water power, is described as follows: (Here follows description of said 12-acre tract.) This May 21, 1906. P. Z. Davis, W. B. Abney."

We copy from appellant's brief the following fair summary of the facts alleged in his petition: "That the defendant Davis on the 21st of May, 1906, was the owner of the Chadwick mill property, consisting principally of land on the east bank of the Colorado river in Mills county, and of certain lands opposite them on the west side of the Colorado river in San Saba county. On that day he conveyed to the plaintiff the lands on the west side of the river and the contract attached to the petition was entered into between Davis and plaintiff; said contract and conveyance being each a part of the same transaction, and the execution by said Davis of said contract being part of the consideration which induced plaintiff to purchase from him the land on the west side of the Colorado river. By the contract Davis bound himself to erect or place in said river at said Chadwick milldam an irrigation pump of sufficient capacity to deliver not less than 350 gallons of water per minute on said lands so conveyed to plaintiff, and, by means of iron casing, convey such water to a point on plaintiff's land, and furnish the necessary power to lift said water to a reservoir to be built by plaintiff on his land, and to furnish plaintiff through such casing sufficient water to irrigate his said lands, the plaintiff to furnish a certain amount of casing for use on his said land. That if said contract had been complied with the plaintiff's land would have been greatly and permanently improved. The plaintiff further alleged that he furnished and laid the casing he contracted to furnish and lay, and built the reservoir he contracted to build, and that the work to be done and the material to be furnished by said Davis under said contract could only be done and furnished as an expense of not less than $6,000. That by means of said irrigation plant, said Davis contemplated, as provided for in said contract, the irrigation of other lands from said reservoir, and that both plaintiff and Davis had in contemplation the permanent improvement of plaintiff's lands, but that the defendants, about February 1, 1912, abandoned their intention of carrying out said contract and had performed no part thereof. In said contract said Davis bound himself to 'maintain said pump and power and casing connections as long as said Abney, his heirs and assigns shall demand the same,' and said Abney was required to pay a stipulated price for water furnished for irrigation. Plaintiff further alleged that with said contract carried out by defendants his land would be of the value of $9,600, and,

without said contract being carried out, it was only of the value of $6,000, and for the difference of $3,600 he asked judgment."

As to the measure of damages appellant's petition was in the alternative. He first sought to recover the difference in the value of his property with and without the improvement referred to, and then, in the alternative, either the difference in the rental value with or without the improvements, or such sum as placed at interest would produce such difference in rental value.

### Opinion.

[1] We sustain appellant's first and second assignments of error, and concur with his able counsel in the proposition submitted thereunder, which reads as follows: "Under the allegations of plaintiff's petition he was entitled to recover of defendants such damages as he sustained by reason of the non-performance by them of the contract made the basis of the suit, and the measure of such damages was the difference between the value of plaintiff's land described in the petition with the contract complied with by defendants and the value thereof with the contract not complied with or performed by defendants."

In a well-prepared brief, appellees' learned counsel attempts to maintain the proposition that the contract sued on was merely an obligation on Davis' part to furnish appellant water for irrigation purposes, but we cannot concur in that contention, but agree with appellant's counsel that the contract called for a permanent and extensive improvement of his land, and in that class of cases the weight of authority holds that difference between the value of the property as it would be if the contract had been performed, and as it is in consequence of the failure to fulfill it, is the correct measure of damages. 2 Sutherland on Damages, p. 492; 40 Cyc. 686, 687; Louisville Elec. Ry. Co. v. Whipp, 118 Ky. 121, 80 S. W. 507; Rosenthal v. Taylor B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268; G. H. & S. A. Ry. Co. v. Haas, 37 S. W. 167; S. A. & A. P. Ry. Co. v. Mohl, 37 S. W. 22; Owens v. Railway Co., 67 Tex. 682, 4 S. W. 593; St. L. B. & M. Ry. Co. v. West, 131 S. W. 839; Fallon v. Amond, 153 Iowa, 504, 133 N. W. 771; Fin & Feather Club v. Thomas, 138 S. W. 150. We quote as follows from Sutherland on Damages, cited above: "This rule of rental value for delay, however, has been departed from where the delay would be indefinitely continuous, as where the execution of the contract has been abandoned; then the difference between the value of the property as it would be if the contract had been performed, and as it is in consequence of the failure to fulfill it. Where a railroad company was bound to build and maintain perpetually a side track in front of certain lots owned by the covenantee, on a breach of this covenant by abandonment, after the track had been laid, it was held that the proper measure of damages was the difference in value of the plaintiff's lots with the side track operated and not operated, together with interest thereon from the abandonment up to the date of the trial, or not, at the discretion of the jury. This rule, says the court, 'renders the ascertainment of the damages easy, certain, and final; and limits them to what would surely be within the contemplation of the parties. Whereas, the annual rental value is more speculative and uncertain; is liable to great fluctuations from causes not within the scope of the contemplation of the parties, nor indeed within the range of their anticipations; besides, if the damages are apportionable, the measure of difference in annual rent would result in a multiplicity of suits; or, if not apportionable, then the result would be purely speculative (as to future rents) or the plaintiff be barred by one recovery from any other."

[2] One of the exceptions sustained to the petition asserted that the contract was unilateral and therefore not enforceable, and we sustain the assignment which complains of the action of the trial court in sustaining that exception. The petition alleged that on the day of the execution of the contract Davis conveyed to plaintiff the lands out of the Phillip Bulger and James H. Baker surveys, referred to in said contract on the west side of the Colorado river, and that conveyance and the contract were each part of the same transaction, and altogether constituted one contract; the execution by said Davis of the contract being part of the consideration which induced plaintiff to purchase from said Davis said land on said Bulger and Baker surveys. The contract is set forth in full in the statement heretofore made, from which it will be seen that a part of the consideration thereof was the agreement by appellant to furnish casing to connect with that to be laid by Davis and extend same from such connection on the second bank of the Colorado river to a large reservoir to be built by appellant on his land, in which water was to be stored, not only for the use of appellant for irrigation, but also for the use of Davis for the irrigation of other lands. Another part of the consideration was the right granted by appellant to Davis to raise his dam so as to overflow in part appellant's land. Appellant further alleged that prior to the alleged defaults of appellees he performed his part of said agreement and constructed the reservoir and furnished and laid the casing from said second bank of the Colorado river to said reservoir and had ever been ready, willing, and able to pay for the water he was entitled to under said contract the said price of $1.66⅔ per acre for his land in cultivation. These averments show that appellant had already performed certain things of value to Davis, and that, by the terms of the contract, he was obligated to

perform others which would inure to the benefit of Davis. These averments refute the contention that the contract required much to be done by Davis and nothing by Abney; and the court should have overruled the contention that it was an unilateral contract.

[3] Appellant alleged that by reason of the facts set forth in his petition he had a lien on the Chadwick mill property, which he sought to foreclose. The court sustained an exception to that part of the petition, and that ruling is assigned as error. Counsel for appellant cite authorities in support of the proposition that, although he was not a party to the contract between the appellees, still, if the other appellees promised Davis to perform his part of the contract between Davis and appellant, the latter can maintain an action against them for failure to so do. But the correctness of that proposition does not show that appellant has any lien, either legal or equitable. None was created by the terms of the contract, and the facts alleged form no sufficient basis for an equitable lien. It may be conceded that, in the absence of a contract lien, a vendor has an equitable lien on the property sold to secure payment of the purchase money; but the petition does not allege that appellant sold to Davis, or any one else, the property upon which he sought to foreclose the alleged lien. Hence we hold that the trial court ruled correctly in sustaining the exception referred to.

[4] Appellees present a cross-assignment of error complaining of the action of the court in overruling a plea of privilege to be sued in the county of their residence, interposed by all the defendants except Davis. The defendant Davis was sued in the county of his residence, and the other defendants, being proper parties, were suable in that county also, under the statute which authorizes suit in any county in which one of the defendants resides, and therefore we overrule appellees' cross-assignment.

For the reasons given, the judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.

Reversed and remanded.