# ERCEG v. FAIRBANKS EXPLORATION CO.

## No. 8107.

Circuit Court of Appeals, Ninth Circuit.

March 30, 1938.

Pillsbury, Madison & Sutro, of San Francisco, Cal. (Alfred Sutro, Francis N. Marshall, and Francis R. Kirkham, all of San Francisco, Cal., of counsel), for Fairbanks Exploration Co.

John L. McGinn and Julien A. Hurley, both of Fairbanks, Alaska, and Robert L. McWilliams, of San Francisco, Cal. (Morgan V. Spicer and Vincent Surr, both of San Francisco, Cal., of counsel), for Erceg.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is a suit to recover damages for injury to a group of placer mining claims situate in Fairbanks Recording District, Alaska. The trial was had to the court without a jury, resulting in a judgment in favor of plaintiff in the amount of $30,000, plus attorney's fees and costs.

Both parties have appealed. For convenience they will be referred to as plaintiff and defendant, as in the court below.

The suit was brought by Mike Erceg as guardian of the estate of George Gartner, an insane person. Erceg was appointed such guardian in August, 1927. Gartner owns three placer claims on Goldstream creek. About the year 1924 the defendant Fairbanks Exploration Company acquired placer ground on that stream above the Gartner claims and carried on operations there through the ensuing years. The gold content of the stream is in the gravels, which are frozen. Covering the gravel is an overburden of frozen muck consisting of black mud which contains roots and vegetable matter. The overburden varies in depth from 10 to 60 feet. The method pursued by defendant in its mining operations consists of three general steps, (1) removing or stripping away the muck with giants, (2) thawing the gravels by the cold water method, and (3) dredging the thawed gravels and sluicing the same to extract the gold content.

It was found by the court that for the purpose of removing the overburden and for thawing and mining purposes the defendant has conducted to Goldstream creek, from other watersheds, large quantities of water, thus greatly increasing the natural flow of the stream. These alien waters, together with the waters of the creek, were diverted from their natural channels and carried by ditches to a high level and thence conducted by pipes to the places of use. Jets of water are there discharged against the overburden, under great pressure, through converging nozzles denominated giants or monitors, thus causing the muck to be excavated and disintegrated. The stripping operations have been so carried on that the resulting debris has completely filled and obliterated the channel of the creek and the defendant has caused large quantities of debris and silt to be carried upon and deposited over the Gartner claims for their entire length and for virtually their entire width. It was found that in the conduct of its operations the defendant acted willfully and in utter disregard of the rights of the plaintiff.

The trial court determined that the cost of sluicing away the overlying silt deposited through the acts of the defendant would exceed the value of the Gartner ground as it was before the injury occurred. It found that the claims contain somewhat in excess of a million cubic yards of auriferous gravels of an average value of 30.7 cents per cubic yard, based on a gold value of $20.67 per fine troy ounce. The expense of mining, it was found, would not exceed 27 cents per cubic yard, thus leaving an operating profit of approximately 3.7 cents. Allowing for a period of five years for mining out the claims, the court determined that the fair and reasonable value of the Gartner property was the sum of $30,000, based on the value of an ounce of gold prior to January, 1934.

1. The appeal of the plaintiff involves three main contentions: (1) That in computing the sum to be awarded him the court erred in deducting from the value of the gold content of his claims the cost of mining; (2) that the court erred in deducting any amount on account of the length of time which it was thought would be required to work out the plaintiff's properties; and (3) that the court should have determined the gold in the claims to be of the value of $35 per ounce instead of $20.67 per ounce.

■ Under his first point the plaintiff urges that the acts of the defendant amounted to a "taking" of his property. It is claimed that the case is analogous to those involving the removal by a willful trespasser of ore from another's mine. Reliance is placed on the familiar holding of many authorities that, where a trespasser removes oil or other mineral from the

land of another, the taking being reckless or intentional, or without claim of right, the measure of damages is the enhanced value of the product when and where it is finally converted to the use of the trespasser, without any deduction for expense incurred or for any value the trespasser may have added to the mineral by his labor. It is sufficient to observe that the defendant has not removed any mineral from the ground. There was no conversion and the gold is still in place. Since the claims were valuable only for their mineral content, such value as they had was the value of the gold less the cost of extracting it.

■ The second point is not well taken. It was for the trial court, on all the evidence, to determine the value of the plaintiff's property. The finding as to value is not assailed as unsupported by substantial evidence, nor is it claimed that it would require less or more than five years to mine out the property. In determining value the court might properly consider all relevant factors, including the element of time normally required to realize on the values which the claims contain.

With respect to the third point, the plaintiff again relies on the assumption that the acts of the defendant amounted to a "taking" of his property. It is said that the Alaska statutes, sections 1568 to 1583, Comp.Laws Alaska 1933, authorize the exercise by the defendant of the power of eminent domain. It is urged that this suit was, in effect, an action for just compensation for the taking of property by a party having the power of condemnation. By treating the suit as a quasi eminent domain proceeding the plaintiff asserts the right to recover the value of the claims as of the time of the trial, thus giving himself the advantage of the increase in the price of gold.[1] The trial court treated the action as one of trespass and applied the ordinary measure of damages, which has been stated as follows: "As to the land available exclusively for mining purposes, if the cost of repairing the injury by removing the debris deposited by defendant would amount to less than the

value of the property as it was prior to the injury, such cost would be the proper measure of damage; but, if such cost of repair or of restoration would exceed such value, then the value of the property would be the proper measure." Salstrom v. Orleans Bar Gold Mining Co., 153 Cal. 551, 96 P. 292, 296, quoted in Lindley on Mines, 3d Ed., § 844; Sutherland on Damages, 4th Ed., § 1017.

■ At the common law, the right of a landowner to recover just compensation for property appropriated by another without the formality of condemnation proceedings was well established. Lewis on Eminent Domain, 3d Ed., § 889; United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; Doyle v. Kansas City & S. Ry. Co., 113 Mo. 280, 20 S.W. 970; Richmond, N., I. & B. R. Co. v. Thomas, Ky., 43 S.W. 466; City of Huntington v. Kenower, 12 Ind.App. 456, 40 N.E. 550. In such actions it has sometimes been said that the landowner is entitled to recover the value of the property as of the time of trial. Morin v. St. Paul, M. & M. Ry. Co., 30 Minn. 100, 14 N.W. 460; Texas Western Ry. Co. v. Cave, 80 Tex. 137, 15 S.W. 786; Blankenship v. State, 160 Wash. 514, 295 P. 480. See, contra, McDougald v. Southern Pacific Co., 162 Cal. 1, 120 P. 766.

Whether or not, in the class of cases just considered, the proper measure of recovery is the enhanced value of the property at the time of trial, we need not stop to inquire.[2] A continuing trespass is not involved. While the injury was cumulative, it was determined by the court and is assumed by plaintiff that the damage to his property was complete prior to the commencement of the action. The suit was tried and determined on the theory that it is an action in trespass, not one involving the power of eminent domain. The pleadings frame no issue of appropriation for a public use. The judgment does not purport to vest in the defendant any title or right of possession. In all the cases we have found bearing on the right of a party to recover just compensation for the taking of property, the theory of

---

[1] The suit was commenced September 8, 1932. It was tried in November and December, 1934. The presidential proclamation, No. 2067, 31 U.S.C.A. § 821, note, fixing the weight of the gold dollar at 15-5/21 grains became effective January 31, 1934. Act of May 12, 1933 as amended, 31 U.S.C.A. § 821.

[2] The Alaska statute, section 1574, Comp.Laws Alaska 1933, provides that the measure of compensation for property to be taken shall be its actual value at the date of summons.

recovery relied on was clearly apparent. In many of them the right of condemnation was specifically alleged. Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1; United States v. Lynah, supra; Faulk v. Missouri River & N. W. Ry. Co., 28 S.D. 1, 132 N.W. 233, Ann.Cas.1913E, 1130; Organ v. Memphis & L. R. R. Co., 51 Ark. 235, 11 S.W. 96; City of Huntington v. Kenower, supra; Richmond, N., I. & B. R. Co. v. Thomas, supra; Blankenship v. State, supra. In others the issue was raised by answer or cross bill seeking condemnation. Pumpelly v. Green Bay & M. Canal Co., 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557; Doyle v. Kansas City & S. Ry. Co., supra; Morin v. St. Paul, M. & M. Ry. Co., supra; San Antonio & A. P. Ry. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040; Texas Western Ry. Co. v. Cave, supra; San Antonio & A. P. Ry. Co. v. Hunnicutt, 18 Tex.Civ.App. 310, 44 S.W. 535; Canton, A. & N. R. Co. v. French, 68 Miss. 22, 8 So. 512; County Com'rs of Blue Earth County v. St. Paul & S. C. R. Co., 28 Minn. 503, 11 N.W. 73.

■ The trial court properly found the measure of damage to be the value of the claims at the time of the injury. The injury being permanent, plaintiff was entitled to recover all damages, past, present, and prospective, proximately caused by the defendant, based upon the values existing immediately before and after the injury. Sinclair Oil & Gas Co. v. Allen, 143 Okl. 290, 288 P. 981; St. Louis, B. & M. Ry. Co. v. West, 62 Tex.Civ.App. 553, 131 S. W. 839; Zuidema v. Sanitary District of Chicago, 223 Ill.App. 138; Houston Belt & Terminal Ry. Co. v. Daidone, Tex.Civ. App., 62 S.W.2d 524. The plaintiff is thus made whole. He is not entitled to the benefit of the fortuitous rise in the price of gold. The Celia v. The Volturno, [1921] 2 A.C. 544, 20 A.L.R. 884; Stone v. Codman, 15 Pick., Mass., 297. As a practical matter, it should be pointed out that the plaintiff still has his property with such enhanced value as the change in the price of gold may have brought about. The defendant has in no sense profited as a result of the change.

2. On the appeal of defendant, Fairbanks Exploration Company, liability for the tort is conceded, but reversal is asked on the basis of the following propositions:

(a) It is contended that the court erred in admitting testimony of an offer to purchase the Gartner claims. One Harris, an employee of defendant, was called by plaintiff and questioned concerning negotiations carried on by him relative to purchasing the property. Over the objection of the defendant that the evidence was immaterial, the witness was permitted to testify that Keene (the manager of the defendant company) at some undisclosed time wanted him to buy the property, to make Gartner an offer. "I went down to see him and talk with him and made him an offer of thirty thousand and he wanted a hundred thousand. I told him there was no chance for him to get that; that I thought he was getting a good price and the best thing he could do was to sell. He wouldn't. * * *"

■ It is claimed that the admission of this testimony necessitates a reversal because, it is said, the record plainly shows that the trial court based its conclusion as to the value of the property upon the defendant's offer to purchase. Since a jury was waived and the case was tried by the court, inadmissible evidence is presumed to have been disregarded in the absence of a showing that such evidence affected the outcome. United States v. Northern Pacific Ry. Co., 9 Cir., 77 F.2d 587; Gardner v. United States, 9 Cir., 71 F.2d 63. However, on the whole record it fairly appears that the testimony with respect to the offer had an important influence on the result.

Numerous cases in both the state and federal jurisdictions are cited in support of the proposition that evidence of offers to buy land is inadmissible on the question of the value of the land. The leading case in the federal jurisdiction is Sharp v. United States, 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211. That case involved claimed error in the refusal of the trial court to permit the plaintiff to testify concerning various offers he had received to purchase his property for a variety of purposes. On appeal the court developed at some length its view that the evidence was properly rejected. The rule there announced has been followed in the federal courts, Clarke v. Hot Springs Elec. Light & Power Co., 10 Cir., 55 F.2d 612, certiorari denied 287 U.S. 619, 53 S.Ct. 19, 77 L.Ed. 537; Wiget v. Becker, 8 Cir., 84 F.2d 706; Emerald Oil Co. v. Commissioner, 10 Cir., 72 F.2d 681, as well as in the majority of the state courts. The prime reasons prompting the exclusion of evidence of offers to buy as bearing on the question of

value are (1) that such evidence is often speculative and unreliable, (2) there is usually no opportunity for cross-examination of the person who is said to have made the offer, and (3) such evidence injects collateral inquiries tending to confuse the main issue and prolong the trial.

An examination of the authorities discloses that most, if not all of them, relate either to the testimony of owners of real estate as to offers to purchase made by third persons, or to the testimony of third persons as to offers to purchase made by them. We have found no case involving an offer to buy made by a party to the suit. In the latter event it seems obvious that the reasons for applying the rule are not persuasive.

Even where the evidence relates to offers of third persons, the rule of exclusion may be relaxed in a proper case. In Buena Vista Land & Development Co. v. Lucas, 9 Cir., 41 F.2d 131, this court held that an offer made by a third party in settlement of a dispute over oil lands would be admissible, if it were the best evidence available, to show the cost of land in determining for tax purposes the amount of gain derived from a sale of real estate. The court pointed out that the rule of the Sharp Case is a rule of policy which may be put aside under certain circumstances. Likewise, in Manufacturers Paper Co. v. Commissioner, 2 Cir., 89 F.2d 684, it was held that, in determining the taxable gain from the sale of stock, evidence of an offer to buy the stock was properly considered, where the offer had been made in good faith by a financially responsible offeror qualified to know the value of such assets. The court said that the criticism leveled against the evidence of offers in general, as in the Sharp Case, had been "satisfactorily met."

Here, the offer to buy was made by an agent on behalf of the defendant. The agent himself testified to the offer and was subjected to cross-examination. There is no suggestion that the offer was made in bad faith, that it was an attempt to compromise, or that it was not based upon the true value of the Gartner claims. Defendant had ample opportunity to develop any facts which might have discounted the value of this testimony or affected its weight.

It is well settled that an offer to sell property at a certain price may be proved against the owner as an admission of its value at or near the time of the offer.

Springer v. City of Chicago, 135 Ill. 552, 26 N.E. 514, 12 L.R.A. 609; Ottawa, O. C. & C. G. R. Co. v. Adolph, 41 Kan. 600, 21 P. 643; Watson v. Milwaukee & M. R. Co., 57 Wis. 332, 15 N.W. 468; City of Springfield v. Schmook, 68 Mo. 394. As stated in 10 Am. & Eng.Encyc. of Law, 2d Ed., 1054: "Upon the ground that the admission of a party to his prejudice in a matter material to the issue is always competent, the admissions of the owners of property, the condemnation of which is sought, that the property had only a certain value, have been considered admissible." Much is left to the discretion of the trial judge in determining whether the time of the offer was too remote or the condition of the property too dissimilar to make the evidence available. Wichita Falls & N. W. Ry. Co. v. Holloman, 28 Okl. 419, 114 P. 700, Ann.Cas.1912D, 287; Patch v. Boston, 146 Mass. 52, 14 N.E. 770, 772.

In Hanson Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 445, 67 L.Ed. 809, which involved condemnation proceedings instituted by the Secretary of War, it was contended that the lower court erred in the admission of certain resolutions, passed by the board of directors of the property owner, authorizing the vice-president of the company to convey the property to the United States for a stated consideration. The court held that such resolutions were admissible to show the amount of compensation to which the owner was entitled, saying, "there is no reason why they [the resolutions] should not be considered as the owner's admission of the then value of the property. The company had opportunity to and did introduce evidence, in explanation of the circumstances attending the adoption and the fixing of the price therein."

So far as concerns its admissibility, it is believed that there is no distinction in principle between an offer to sell made by the owner of land, who is a party to the suit, and an offer to buy made by one who is a party. In either situation the ground upon which the evidence is received is that the offer amounts to an admission by the party of a fact which is inconsistent with his assertions at the trial. "Anything said by the party-opponent may be used against him as an admission, provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony." Wigmore on Evidence, 2d

Ed., vol. 2, § 1048. "If one of the parties to the present action has himself offered to buy or sell the land in question, or other similar neighboring land, evidence of this offer may be offered against (not for) him as an admission." McCormick on Damages, § 46. See, also, Oakland Water Front Co. v. LeRoy, 9 Cir., 282 F. 385, quoting Wigmore as above.

■ In its answer the defendant denied that the property of plaintiff had any value. It has persisted in this contention throughout the trial and on the appeal. Treated as an admission, the offer to purchase the Gartner property was properly admitted as evidence not only that the claims had some value, but also as evidence of what the value was.

■ (b) It is urged that there is no evidence to support the finding that the Gartner ground, prior to the deposit of silt by the defendant, could have been mined at a profit. This contention is based on what is said to be the physical fact that there is insufficient grade on Goldstream creek to transport the overburden of muck from the Gartner claims. The argument is that the channel of the creek as it coursed through the Gartner ground had an average depth of approximately 15 feet, and that the bottom of the natural channel of the stream was some 9 feet above the level of the gold-bearing gravel; and in order to strip off the overburden it would be necessary to construct a drain having an intake at the level of the gravel. Elaborate charts are set out in the brief which are said to demonstrate that the grade of such drain cannot carry stripping waters. It is said that the defendant has itself, by experience, determined that a grade of 2.85 feet to each thousand is the minimum which will transport muck, and that the drain which the plaintiff would have to construct could not have a grade in excess of 2.07 feet.

However, there was evidence that it would be practicable to work the Gartner ground and that sufficient grade existed to afford the necessary drainage. At most, the evidence presented a conflict of opinion which it was the province of the trial court to resolve. The court was not obliged to adopt the theory of the defendant that a given grade was required to carry off the overburden, nor to accept the testimony of defendant's witnesses as to what the grade was or what their experience had been. The credibility of the witnesses and the weight of the evidence on this point were for the lower court to determine.

■ (c) It is urged that the court erred in failing to hold as a matter of law that the statute of limitations bars recovery for damages which occurred more than two years before the commencement of the action. The argument is based on the contention that the suit is not one for trespass upon real property but is an action on the case. The Alaska statute imposes a six-year limitation on actions for trespass upon real property. Comp.Laws Alaska, § 3356. The parties are in agreement that section 3358, Comp.Laws Alaska, imposing a two-year limitation, governs in actions on the case and we will assume this to be true for the purpose of the inquiry.

Whether an action is one of trespass or case is frequently difficult of determination. It is said in Cooley on Torts, 4th Ed., § 326: "As regards the directness of the injury which will distinguish a case in trespass from one in which the remedy must be sought on the special case, there seems to be no better rule than this: that if the unlawful force caused the injury before it was spent, this injury must be deemed direct; but if, after the unlawful force was spent, the injury occurred, as a collateral or secondary consequence, it is to be considered indirect."

Attention has already been called to certain of the findings concerning the manner in which the injury was inflicted. For another purpose, the defendant itself has graphically described in its brief the process or operation by which the removal and transposition of muck was accomplished. It says, "in stripping, huge streams of water under heavy pressure are shot from giants upon the open muck surface, and literally pick up and carry away hundreds of thousands of cubic yards of dirt. The pressure back of the cutting waters loads them to capacity, and they flow from the stripping area heavy with silt—ready to deposit this load wherever they find a sluggish slope." The placer ground of the defendant lay immediately above plaintiff's claims. It was found that the old channel of the creek lying upstream from the Gartner claims was completely obliterated by dredging and by the stacking of tailings on the mined out area.

We do not have here a situation comparable with that considered by Judge Dietrich in Hill v. Empire State-Idaho Mining & Developing Co., C.C., 158 F. 881, where quantities of waste material were discharged into a stream and subsequently carried over lower lying lands by reason of the intervening agency of high water. It is plainly to be inferred from the findings that the debris was discharged more or less directly over the surface of the ground below, not principally through its deposition in the stream. On principle, the consequences of defendant's acts were as direct and immediate as would have been the case had the waste materials been transported and dumped on plaintiff's ground by means of wheelbarrows or mine cars. The action is one for trespass upon real property, and the six-year limitation applies.

(d) Error is predicated, also, on the admission of testimony concerning damage to land belonging to the witness Diebold. The testimony was offered in connection with an attempt to show that the defendant early had notice that its operations were filling up the stream bed to the detriment of lower lying proprietors. It was relevant for this purpose.

The judgment is affirmed.