(No. 11434.—Judgments affirmed.)

JOHN NICHOLSON, Defendant in Error, *vs.* THE INLET SWAMP DRAINAGE DISTRICT, Plaintiff in Error.—JOHN W. GRAY, Defendant in Error, *vs.* Same Plaintiff in Error.—ANDREW ASCHENBRENNER *et al.* Defendants in Error, *vs.* Same Plaintiff in Error.

*Opinion filed October 23, 1917.*

DRAINAGE—*when district is liable for damage to land owners by contractor in dredging.* The drainage district, and not the contractor, is liable for damage to land owners through the caving in of the banks of a ditch during the progress of construction which necessitated additional dredging, resulting in deposits of sand and mud on the property of adjoining owners, where the damage was caused because the district's plans and specifications were defective in not allowing sufficient slope for the sides of the ditch.

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

HENRY S. DIXON, GEORGE C. DIXON, GROVER W. GE-
HANT, and RAY T. LUNEY, for plaintiff in error.

E. E. WINGERT, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Three suits were brought in the circuit court of Lee
county against the Inlet Swamp Drainage District to re-
cover damages alleged to have been sustained by the plain-
tiffs, severally, by reason of the deposit of sand, clay, mud
and stone on their lands at the time of the widening and
deepening of the main drainage ditch belonging to the
drainage district.   One of these actions was brought by
Joseph Nicholson, another by John W. Gray, and a third
by Andrew Aschenbrenner and Reinhart Aschenbrenner.
The causes were consolidated for trial in the circuit court,
a jury was waived and a trial was had before the court,
which resulted in the rendering of a judgment in each case
in favor of the plaintiff.   A single bill of exceptions was
preserved in the consolidated cases, and this writ of error
has been sued out to review the judgments.

It is conceded that the plaintiffs have been injured by
the deposits placed upon their lands and that the respective
judgments are correct in amount as measuring the damage
done.   The only question raised is that of liability.

It is contended on the part of the defendant district that
the injury done was caused by an independent contractor
who was not made a party to the actions.   Whether, under
the proof made, the liability was that of the defendant dis-
trict or of an independent contractor was raised by propo-
sitions of law submitted by the defendant and refused by
the court.

The defendant district was organized many years ago
and soon after its organization caused to be constructed
what was known as its main ditch, which extended through
the lands of the several plaintiffs.   In 1911 the district pro-

cured an order for the making of extensive improvements, involving an expense of almost $400,000. Among other things, this order authorized the deepening and widening of the main ditch, and for that purpose the securing of additional width of right of way across the lands of plaintiffs. This additional right of way was obtained. The right of way through a part of the Aschenbrenner tract consisted of a strip 83 feet wide on the north side and 108 feet wide on the south side of the center line of the main ditch, and through the remainder of that tract and through all the lands of Gray and Nicholson 83 feet wide on the north side and 100 feet wide on the south side of the center line of the main ditch. The contract to make the improvement was let to the Northern Construction Company, and a written contract was entered into between it and the defendant for the excavation of the main ditch. The defendant had previously employed competent engineers and had made a thorough investigation of the experience and competency of the Northern Construction Company. The work to be done embraced the digging of over twenty-four miles of open ditch. About four miles of the excavation in the main ditch was through limestone rock, nearly all of which was down-stream from the lands involved. The construction company began its dredging in what was known as the middle ditch, which was up-stream from these lands, with the intention of working down-stream through the earth excavation and then through the stone to the outlet, and in so doing it made an excavation of the depth and width prescribed by the plans and specifications through the lands involved. For some reason this plan of doing the work was then abandoned and the excavation of rock was begun at the outlet and proceeded up-stream. In doing the work the construction company built a dam at the upper end of the rock formation, which was down-stream from the lands of the plaintiffs. This dam was built and kept closed in the day time while the contractor was drilling and shooting the

rock, and then opened at night and the water permitted to flow down over the rock. It is claimed on the part of the defendant that as a result of the maintenance of this dam the channel above, which had been theretofore excavated to the required grade, filled up with sand to such an extent that the contractor was obliged, before the final completion of its work, to dredge out the sand through the Aschenbrenner tract, which was the farthest down-stream of the lands involved, four different times and through the Gray and Nicholson tracts two or three times. It is argued from this that the damage resulted from want of care on the part of the contractor and not through any fault of the defendant, because the defendant did not authorize or direct the contractor to do other than the initial excavation along the lands of plaintiffs, and the right of way procured by the defendant was of ample width for the deposit on the spoil-banks of all material necessary to be excavated from the channel in the manner required by the plans and specifications.

There were no provisions in the plans and specifications as to the details of the operations in excavating the ditches or doing any of the work to be done. The plans and specifications merely designated the work to be done and the amount of material that it was necessary to remove. The ditch through the lands of plaintiffs varies in depth from 12 to 18 feet and was to be constructed with a bottom 40 feet in width. Where the construction was through rock, the sides were to be sloped at the ratio of three inches horizontal to each foot rise. Through all other materials the sides were to be sloped at the ratio of six inches horizontal to each foot vertical rise. It will thus be seen that even through the earth formation the sides of the ditch were to be left at a very steep slope. An engineer called on behalf of plaintiffs testified that in earth excavation this was not a proper slope, but that the slope should be at least one foot horizontal to each foot vertical rise. The soil through al-

280 — 24

most all the lands of plaintiffs consisted of about five feet of black loam, underneath which was quicksand and gravel. During the progress of the work the banks caved in at various times, until when completed the ditch was fully twice the width the specifications called for. This earth which caved in the construction company was compelled to remove and place on the spoil-banks. It is apparent from the testimony that while the ditch was being constructed and the dam maintained below the Aschenbrenner tract, sand and silt were washed down the ditch and deposited along the plaintiffs' lands, particularly along the Aschenbrenner tract. This also was dredged out, and it was this extra material, caused by the caving in of the banks and the washing down of sand and silt, that spread over the lands of plaintiffs and caused the greater part of the damage. There was some rock formation along the Aschenbrenner tract, and it appears that although the sides of the spoil-banks were as steep as they could be built, this material also extended beyond the additional right of way obtained by the district.

While the defendant relies upon the rule that the contractee is not liable for an injury which results from the wrong or negligent manner in which work is done by an independent contractor, it concedes that there are a number of exceptions to this rule, and that one of them is, that where the injury is due to the contractee's defective plans or methods pursuant to which the work was done, such methods being furnished and directed by the contractee, the contractee is liable. In attempting to show that this case does not come within that exception it contends that the damage complained of resulted from the method of doing the work by the contractor; that sufficient right of way was furnished the contractor, and that proper and sufficient plans for the construction of the work without injury to others were provided by a competent engineer. While the testimony is somewhat conflicting as to whether these plans and specifications were proper where the excavation was

to be made through earth, there is convincing proof in the record that in excavating through such material as was found along this ditch, with the slope of the sides of the ditch as specified, there was great danger and probability that the sides of the ditch would cave in,—and this especially when the enormous weight of the spoil-banks and the action of the water on the banks or sides of the ditch are taken into consideration. The court was justified in entering judgments against the defendant upon the ground that the work was done in accordance with the plans and specifications and that such plans and specifications were defective in not making allowance for the probability of the caving in of the banks of the ditch and the deposit of silt and sand in the bottom during the progress of its construction.

The engineer for the defendant testified that it was necessary to construct dams in the ditch in order to float the dredges. It certainly was not contemplated by the defendant that the construction company would construct these ditches without the use of dredge-boats. If it was necessary to construct these dams in order to float the dredges, the defendant certainly cannot complain that dams were constructed by the contractor or charge it with negligence because they were constructed. The engineer for the defendant further testified that as the work progressed he and the commissioners considered, on the whole, that it was being done in a skillful, workmanlike and scientific manner by the construction company.

The defendant is liable, and the court committed no error in refusing the propositions of law submitted and in entering judgment against it.

The judgments of the circuit court are affirmed.

*Judgments affirmed.*