138    APPELLATE COURTS OF ILLINOIS.

Zuidema v. Sanitary Dist. of Chicago et al., 223 Ill. App. 138.

## Minard Zuidema, Appellee, v. Sanitary District of Chicago and Green & Sons Company, Appellants.

## Gen. No. 25,687.

1. SANITARY DISTRICTS—*when district not liable for overflow of land.* Evidence reviewed, in an action by a farm tenant against a sanitary district and a contractor, to recover for injury caused by the overflow of water, and *held* that as there was no claim that the plans and specifications were defective and the work was such as was authorized by statute, and was performed by an independent contractor, and there was no evidence of negligence on the part of the district, the latter was not liable.

2. SANITARY DISTRICTS—*when attorneys' fees not allowed in action against district and contractor for overflow of lands.* Although under section 19 of the Sanitary District Act (Cahill's Ill. St. ch. 42, ¶ 357) attorneys' fees could in a proper case be allowed to plaintiff in an action for damages against the district, such fees were not allowed in the action in question against the district and a contractor, for injury caused by the overflowing of plaintiff's lands, where the method of doing the work was to be determined by the contractor under the supervision of the district, as under such circumstances the district was not liable for the negligent acts of the contractor.

3. DAMAGES—*what is measure of damages for injury to growing crops not matured.* In an action to recover for injury to growing crops which were not matured, the measure of damages was the value of the crops as they were when destroyed, with the right of the owner to mature and harvest them at the proper time; but neither opinion evidence tending to show what the crops in question would yield if allowed to mature, nor what the market value was at the time of maturity, was the proper way of proving the damages.

4. DAMAGES—*what instruction would be improper in action for injury to growing crops.* In an action to recover for injury to growing crops which were not matured, an instruction which stated that if the damage was occasioned by obstructing the drainage facilities, still if it afterwards appeared from the evidence that the farm in question was submerged from excessive rainfall which, of itself, would have destroyed the crop, plaintiff could not recover, would have been improper, because if the evidence showed what the crop in its immature condition was worth prior to the time it was submerged, that would have been the measure of damages, for it would be the amount the crop would then have brought;

and the subsequent flood which submerged the land would in no way change the damages.

5. DAMAGES—*evidence of damage to growing crop.* Under the rule that the measure of damages to a growing crop which is not matured is the value of the crop as it was when destroyed with the right of the owner to mature and harvest it at the proper time, the evidence covering that point should tend to show what the crop would fairly bring in its immature condition just prior to the time it was damaged; and this could be estimated by witnesses familiar with farming, and the basis of the value fixed could be brought out on cross-examination and which would be to the effect that the amount a man would pay for an immature crop would depend on the condition and quantity of the soil, the nature of the crop and its probable yield, the hazard of maturity and a number of other elements.

6. SANITARY DISTRICTS—*joinder of independent contractor as defendant with district in action for damage from overflow of lands.* An independent contractor could not properly be joined with a sanitary district under the provisions of the Sanitary District Act (Cahill's Ill. St. ch. 42, ¶ 357) in a statutory count of a declaration in an action for damage to crops by the overflow of lands.

7. APPEAL AND ERROR—*when judgment against sanitary district and contractor for overflow of lands cannot stand.* Where one count of a declaration stated a good common-law action for negligence against a sanitary district and a contractor, the judgment against both defendants could not stand where there was no evidence in the record of any negligence on the part of the district.

Appeal from the Circuit Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded. Opinion filed December 21, 1921.

C. ARCH WILLIAMS, WALTER E. BEEBE and WILLIAM F. MULVIHILL, for appellant Sanitary Dist. of Chicago; WILLIAM E. HELANDER, MORTON S. CRESSY and PRESTON CLARK, of counsel.

DENT, DOBYNS & FREEMAN, for appellant Green & Sons Co.; LOUIS D. DENT, of counsel.

COBURN & BENTLEY, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendants to recover damages claimed to have been sustained by him by reason of the defendants causing water to overflow and damage his growing crops. There was a verdict and judgment in his favor for $2,900, to reverse which defendants prosecute this appeal. Plaintiff has assigned cross errors because the court refused to allow attorneys' fees as costs against the Sanitary District of Chicago.

The record discloses that the sanitary district obtained a right of way to construct what is known as the Calumet-Sag Channel to connect the main channel of the sanitary district with the Little Calumet river, a distance of about 20 miles; that this right of way extended across the farm of Michael McMahon, and that he had rented that portion of the farm lying north of the right of way, which extended in a general easterly and westerly direction, to the plaintiff, Minard Zuidema; that the sanitary district let a contract for the construction of a part of the channel bordering on the McMahon farm to the defendant Green & Sons Company. The declaration on which the case was tried was in one count and, so far as it is material, it alleged that the plaintiff was a tenant occupying the farm along the north side of the channel; that the construction of the channel by Green & Sons Company necessarily involved the changing of the drainage and waterways and that it was the duty of the two defendants not to interfere with the drainage of the land or to destroy plaintiff's crops by causing the land to be marshy and soggy, yet the defendants did "negligently, carelessly and wrongfully and contrary to the statute in such case made and provided," cut through the natural drainage creeks and watercourses, dammed up some of them, deposited great banks of spoil and erected settling basins so that plaintiff's farm was not afforded drainage and the land became soggy and sour and water flowed upon

it damaging the crops of 1915 and 1916.   After the evidence was all introduced, by leave of court, the plaintiff filed an additional count which contained substantially the same averments as the count on which the case went to trial.   It further set up that in the construction of the channel it was the duty of each of the defendants to so prosecute the work as not to negligently and unnecessarily injure or damage plaintiff's property; that the defendants failed to perform this duty but on the contrary in constructing section 5 of the channel they carelessly and negligently cast upon plaintiff's farm water, débris and spoil, which rendered plaintiff's farm wet, soggy and sour and of little or no value and thereby damaged his crops and prevented him from raising any crops during the seasons of 1915 and 1916.   The defendants filed separate pleas of not guilty and also pleas denying joint liability.

The evidence tends to show that the sanitary district on June 22, 1912, entered into a contract with Green & Sons Company to construct what was known as section 5 of the channel, which section extends from a short distance west of McLaughry's Bridge east to a north and south road known as Ladies Lane, a distance of a little more than a mile.   And on April 10, 1913, another contract was entered into between the same parties in reference to section 6 of the channel which section ran from Ladies Lane east to a point near the Wabash Railroad, a distance of about one and one-half miles.   The west end of the land in question bordered on Ladies Lane and was immediately north of the channel extending from Ladies Lane east about three-fourths of a mile.   The tract contained about 135 acres.

The evidence further shows that before commencing the construction of the channel, Green & Sons Company dug a drainage ditch on both sides of the right of way.   The ditch on the north of the right of

way extended along the south side of the farm and was 16 feet wide at the top and 8 feet wide at the bottom. The right of way, channel and drainage ditches extended a considerable distance east of plaintiff's farm where it tapped the Little Calumet river; and also extended a considerable distance west of the farm where they connected with the main channel of the district. Prior to the acquisition of the right of way by the sanitary district, Michael McMahon, the owner of the farm, had dug a ditch which ran in a northwesterly and southeasterly direction across his farm. At a point a short distance east of Ladies Lane, this ditch converged with the north drainage ditch dug along the north edge of the right of way. Adjacent to the northwest corner of the McMahon farm and running in a northeasterly and southwesterly direction was an old ditch known as the Canal Feeder which had been constructed many years before the time in question. The water from McMahon's ditch emptied into this feeder and it was the contention of the plaintiff that the feeder ran towards the southwest, while the defendants contended that the feeder at the time in question flowed towards the northeast. In the construction of section 5 of the channel, defendants used what is designated as the hydraulic or wet system by which water and material were pumped from the channel to the spoil area. The spoil would settle and the water would return to the channel. On section 6, which was directly south of and bordering on the land in question, the drag line or dry method of excavation was adopted, and some distance east of the farm the hydraulic system was used. The spoil was deposited on both sides of the channel. After the work on section 5 was in progress for some time it was discovered that near the west end of that section there was so much spoil that the bank of the channel would not retain it and on January 27, 1914, a supplemental contract was entered into between the two de-

fendants which provided that no more spoil should be deposited on the north bank near the west end of that section. The effect of this was simply to decrease the spoil area bordering on the north of section 5. In the construction of this section, Green & Sons Company deposited spoil immediately west of Ladies Lane and north of the channel in the spoil area which contained some 40 or 50 acres. This spoil was deposited in what is designated by the parties as a settling basin somewhat in the shape of a bowl. The evidence also tended to show that the north drainage ditch, which was dug along the north edge of the right of way, was dammed by what plaintiff calls a bulkhead, which was a considerable distance east of plaintiff's farm. In order to provide water for use in the hydraulic dredge in the construction of section 5, a dam was built in the canal feeder just west of Ladies Lane and further on in this feeder near the west end of section 5, a distance of approximately a mile or more, was another dam. These two dams and the bulkhead were constructed by Green & Sons Company in the prosecution of the work.

Plaintiff's position is that the water in this settling basin overflowed the edge of the bowl onto plaintiff's crops; that the water from this settling basin also seeped out through the edge of the bowl onto his farm making the soil sour and soggy; that the same result also was caused on account of the deposit placed along the south side of the farm adjoining section 6 of the channel, and because of the bulkhead and the two dams in the feeder which interfered with the drainage facilities of the farm; that by reason of these causes his crop in 1915 was destroyed and the ground was left so wet and sour that he was able to plant but little in 1916 and, therefore, he sustained the loss of his crop for both years. On the other hand, the defendants' position is that the crops were destroyed by excessive rainfall in 1915 and that no damage at all was

144 APPELLATE COURTS OF ILLINOIS.

Zuidema v. Sanitary Dist. of Chicago et al., 223 Ill. App. 138.

caused by the construction of the channel, but on the contrary the construction of the channel improved plaintiff's drainage facilities and had it not been for the excessive rainfall which destroyed the crops plaintiff's land would have been in much better condition because of the construction of the channel than it was prior to that time.

The north drainage ditch flowed towards the west into the canal feeder and obviously the bulkhead placed east of plaintiff's farm in this ditch could do no harm to plaintiff's land, but on the contrary would tend to keep water from flowing towards his farm. Witnesses for the plaintiff testified that the water in the canal feeder flowed towards the southwest, while witnesses for defendants testified that it flowed towards the northeast. A survey showing the elevation of this feeder shows that the top of the dam in the feeder just west of Ladies Lane was less than 9 feet above Chicago City Datum, while the elevation of the bottom of this feeder near the west end of section 5 was more than 13 feet above Chicago City Datum. In these circumstances, of course, the water in the channel must necessarily have flowed towards the northeast and the water which was retained between the two dams in the canal feeder could have had no detrimental effect on plaintiff's land. There was evidence tending to show that the edge of the settling basin just west of Ladies Lane overflowed and that the water ran upon plaintiff's crops, but whether plaintiff's crops were destroyed by the water flowing from the sources which we have indicated, as contended for by the plaintiff, or whether it was destroyed by the excessive rainfall, in the view we take of the case, it is unnecessary to decide.

After the verdict was returned in favor of plaintiff and against the two defendants, plaintiff moved the court to allow him attorneys' fees and to tax them as costs under section 19 of the Sanitary District Act.

ch. 42, Rev. St. (Cahill's Ill. St. ch. 42, ¶ 357). The court denied the motion and refused to allow attorneys' fees on the ground, as it is stated, that he considered the case one of common-law negligence and not a statutory action arising under section 19 of the Drainage Act. We think section 19 in a proper case would allow plaintiff to recover attorneys' fees where the damages suffered by him resulted from the negligent manner in which the channel was constructed, as well as it would allow attorneys' fees for damages suffered even if there was no negligence in the method of construction, for this section provides that the sanitary district "shall be liable for all damage to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction, enlargement, or use of any channel, ditch, drain, outlet or other improvement under the provisions of this Act." But plaintiff's position, as we understand it, is that the negligence of Green & Sons Company, the contractor, was the negligence of the sanitary district because the contractor was the servant of the district in the construction of the work. With this contention we cannot agree. The two contracts contained the plans and specifications for the doing of the work but left the method in which it was to be done to be determined by the contractor under the supervision of the sanitary district. In these circumstances it is the law that the sanitary district was not liable for the negligent acts, if any, of the contractor. *Hale v. Johnson,* 80 Ill. 185; *Frassi v. McDonald,* 122 Cal. 400; *Green v. Soule,* 145 Cal. 96.

There is no claim that the plans and specifications were defective, and the work was such as was authorized by statute. It was performed by an independent contractor. The sanitary district obtained a deed for the right of way from Michael McMahon, the owner of the farm, which recited that the "grantors in further consideration of the payment of the money here-

inbefore receipted for releases all claims for damages to lands not taken by the grantee herein for its right of way, growing out of the construction and maintenance of the Calumet Sag Channel and necessary adjuncts thereto." In these circumstances the sanitary district would not be liable for damages to plaintiff's crops unless the evidence showed that such damages were caused in whole or in part by the negligence of the district. And since it is not claimed that the plans and specifications for the work were defective, and the work having been done by an independent contractor, and since there is no evidence of any negligence on the part of the sanitary district, it is not liable. *Nicholson v. Inlet Swamp Drain. Dist.*, 280 Ill. 366.

We think there is another question that we should pass upon and that is the measure of plaintiff's damages. The rule of law in such case is that the measure of damages to growing crops which are not matured is the value of the crop as it was when destroyed with the right of the owner to mature and harvest it at the proper time. *Homeier v. Calumet Brick Co.* (abst.), 218 Ill. App. 630; *Economy Light & Power Co. v. Cutting*, 49 Ill. App. 422; *St. Louis Merchants' Bridge Terminal R. Ass'n v. Schultz*, 226 Ill. 415; *Adams v. Stadler*, 78 Ill. App. 434; *Funston v. Hoffman*, 232 Ill. 368. Indeed, this rule of law seems to be conceded by both parties but the difficulty is in the application of it to the particular case. Plaintiff offered opinion evidence tending to show what the crops in question would yield if allowed to mature, and also what the market value of such crops was at the time of maturity. This, of course, was not the proper way of proving the damages under the rule announced. The sanitary district offered an instruction, which was refused, to the effect that if the damage to the crops was occasioned by obstructing the drainage facilities, still, if afterwards it appeared from the evidence that

the farm was submerged from excessive rainfall which of itself would have destroyed the crops, plaintiff could not recover. It is apparent that this instruction was not in accordance with the rule which we have stated, for if the evidence showed what the crop in its immature condition was worth on May 15, prior to the time it was damaged, that value would be the measure of damages for it would be the amount the crop would then bring, and the fact that afterwards in July or August there was a flood which submerged the land would in no way change the amount of damages. The evidence covering this point should tend to show what the crop would fairly bring in its immature condition just prior to the time it was damaged. This could be estimated, of course, by witnesses who were familiar with farming and the basis of the value fixed by such witnesses could be brought out on cross-examination and which would be to the effect that the amount a man would pay for an immature crop would depend upon the condition and quality of the soil, the nature of the crop and its probable yield, the hazard of maturity and a number of other elements. The evidence offered did not at all comply with the rule of law stated and there was no basis upon which the jury could correctly determine the extent of the damages.

Complaint is also made to the giving of certain other instructions on behalf of plaintiff. We think all we need to say is that instructions 1 and 3 were not at all clear and might mislead the jury. We think that what we have already said renders any further comment on the given instructions unnecessary. Nor do we think it necessary to comment on errors claimed to have been committed by the trial court in refusing to give certain instructions on behalf of defendant for the same reason.

Upon a reconsideration of the entire record on the

limited rehearing allowed, we are of the opinion that the first count of the declaration is a statutory count. Under the provisions of the statute (section 19, *supra*) the only liability there created is against the sanitary district, and since we have held that Green & Sons Company was an independent contractor, the sanitary district was not liable for the negligence, if any, of the contractor. And since the sanitary district was released from all liability, other than that caused by its negligence, by the McMahon deed, and since there was no evidence of negligence on the part of the sanitary district, no recovery could be had under that count against either defendant. The contractor could not properly be joined in such a count.

The second count of the declaration states a good common-law action for negligence against both defendants, but since there is no evidence in the record of any negligence on the part of the sanitary district, the judgment against both defendants cannot stand.

For the several reasons stated, the judgment of the circuit court of Cook county is reversed and the cause remanded.

*Reversed and remanded.*

THOMSON and TAYLOR, JJ., concur.