(No. 4583—

Thomas P. Creamer, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed September 24, 1954.*

Paul F. Wanless, Attorney for Claimant.

Latham Castle, Attorney General; C. Arthur Nebel, Assistant Attorney General, for Respondent.

Fearer, J.

Claimant, Thomas P. Creamer, on September 29, 1953, was leasing the following described real estate,

which was situated in the County of Sangamon and State of Illinois:

The North West ¼ (N.W.¼) of Section 7, (7), Township Fifteen (15) North, Range Five (5) West of the Third Principal Meridian.

Said real estate was located on the north side of U. S. Highways Nos. 36 and 54.

On the above mentioned date, the Division of Highways was engaged in repairing the concrete pavement adjoining claimant's land. The repairs were confined to the north half of the pavement, or the portion of the pavement divided for westbound traffic. Portions of the pavement in said traffic lane were removed, and respondent's agents erected barricades, and placed lighted flares, warning motorists traveling upon said highway of the repair work. The flares were placed three or four feet off of the pavement on the north shoulder of the highway. One of the flares was placed on the shoulder of the road adjoining a twenty acre field of wheat stubble and clover, which was owned by claimant. Respondent's exhibit No. 2 clearly defines the physical layout of the fields in question, as well as the highways.

Between the hours of 3:00 and 3:30 P.M. the maintenance employees of respondent, after affixing and lighting the flares in question, went to a barricade approximately 3/16 of a mile to the west of the lighted flares, and opposite claimant's field. While there, they discovered that the south side of claimant's wheat stubble and clover field was afire. From the evidence, it appears that the right-of-way adjacent to the corn field, which is shown in respondent's exhibit No. 2, was also afire for about one hundred feet. At the time a strong wind was blowing from the south. A sixty acre field of corn, which was located immediately east of the wheat stubble and clover field, was subsequently burned.

Upon becoming aware of the fire, and in claimant's absence, his son plowed a width of four rows of corn along the westerly and southerly edges of the sixty acre field of corn. The day following the fire the easterly edge of the aforesaid corn field, adjoining the clover field, was plowed, because road repairs were still being made. Claimant testified he was afraid that another fire would be started by the flares, which were being used on the shoulder of said highway. However, there is no testimony in the record as to wind conditions on the following day. Testimony was also offered as to other rows of corn being damaged in the process of the plowing by the wheels of the tractor, and it was estimated that approximately seven acres of corn were plowed under or damaged on September 29 and 30. The fire in question occurred approximately one month prior to the time that the corn would have been harvested.

There is no dispute as to the facts as to what actually occurred, which were testified to by claimant and his witnesses. However, no one saw the start of the fire, and it was suggested that it might have been started by some other means.

The Court is of the opinion that respondent was negligent in the performance of its duty to the farming public in failing to place the lighted flares in a safe position, knowing that the wind was blowing toward claimant's land, and not providing a close watch to prevent the spread of fire along said right-of-way and onto said fields.

*Adams* vs. *State of Illinois*, 18 C.C.R. 212.

In regard to the question of damages, there was testimony offered on behalf of claimant that the corn damaged was worth $70.00 per acre at the time of the fire. The straw, which was left as a cover on the clover

field, was valued at $8.00 per ton, and there were approximately forty tons of straw on the field. The clover, which had been planted in the wheat in March of 1953, had reached a height of about eight inches, and was to be plowed under as fertilizer in the spring of 1954. Claimant offered testimony that twenty acres of clover were completely destroyed to the point where it would have to be reworked in March of 1954. The clover was valued at approximately $20.00 per acre. Claimant's son testified that, in his best judgment, about two and a half acres of the field were not seriously damaged.

Respondent offered no testimony in regard to the question of damages.

We have arrived at the damages, based upon the testimony offered, in the following manner:

Seventeen acres of the clover field were damaged, which at $20.00 per acre would make a total of $340.00. We have reduced the amount of damage to the clover field for the reason that approximately three acres were not damaged by the fire, and could have been plowed under, and used as fertilizer in the spring of 1954.

An award should be made for damages to the wheat straw, which was estimated to run about two tons to the acre. At $8.00 per ton, we estimate such damages at $272.00.

As to the damage to the corn by reason of plowing, an award will be made for $367.50 for the reason that we do not believe it was necessary, or that claimant was justified in plowing the easterly edge of the corn field. While it adjoined the wheat stubble and clover field, it was not plowed until the following day, because claimant felt another fire might occur as a result of the continuance of repairs to the road.

In regard to an award for the labor required to plow the field in order to prevent the spread of the fire, we are allowing an award of $22.50.

In an action to recover for injury to growing crops, the measure of damages is the value of the crops at the time when destroyed with the right of the owner to mature and harvest them at the proper time. (*St. Louis Bridge Ry. Assn.* vs. *Schultz,* 226 Ill. 409; *Zuidema* vs. *Sanitary District of Chicago,* 223 Ill. App. 138; *Adams* vs. *State of Illinois,* 18 C.C.R. 212).

We, therefore, find judgment in favor of claimant, and enter an award herewith in his favor in the amount of $1,002.00.