**In the Matter of Lawrence J. HOLYST, fdba H & W Building & Remodeling, Debtor.**

**Lawrence J. HOLYST, fdba H & W Building & Remodeling, Plaintiff,**

v.

**DIAMOND INTERNATIONAL CORPORATION, Defendant.**

**Bankruptcy No. 2–81–00775. Adv. No. 2–82–0016.**

United States Bankruptcy Court, D. Connecticut.

April 2, 1982.

Samuel B. Feldman, Lublin, Kagan, Lublin, Wolfe & Kantor, East Hartford, Conn., for plaintiff.

Barry C. Pinkus, New Haven, Conn., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

This proceeding is brought pursuant to 11 U.S.C. § 522(f)(1) [1] to avoid a judicial lien allegedly impairing an exemption of the debtor. Specifically, Lawrence J. Holyst, fdba H & W Building & Remodeling, the debtor, is seeking to avoid a judgment lien in the amount of $3,875.00 on his joint [2] interest in his residence (property).[3]

### II.

The debtor filed a chapter 7 petition on July 14, 1981. He was granted a discharge on September 23, 1981, and on October 30, 1981, his case was closed after the court approved the trustee's report of no distribution. On January 4, 1982, the debtor filed a motion to reopen his case for the purpose of avoiding a lien on property. Over the objection of Diamond International Corporation (Diamond), the defendant in this proceeding, the court granted the motion. The debtor filed his lien avoidance complaint on January 10, 1982. Diamond's answer to the debtor's complaint alleged that the debtor's complaint was barred by not being brought prior to the time the case was closed; that the debtor is estopped from avoiding the lien because of representations he made to Diamond; that the lien sought to be avoided by the debtor was voluntarily placed on his property pursuant to a stipulation for judgment; and that the judgment lien does not impair the debtor's exemption.

At the trial, the debtor offered testimony from George Budd, an appraiser, that the entire property was worth $90,000.00 based upon sales of comparable homes in the area.[4] The debtor testified that the property was encumbered by two mortgages with

---

1. Section 522(f)(1) provides that:
   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   (1) a judicial lien . . . .

2. While the debtor's schedules do not list the property as jointly owned with his wife, the parties have treated it as such. Accordingly, this opinion will assume that the debtor has a one-half interest in the property.

3. Section 522(d)(1) of the Bankruptcy Reform Act (BRA) states that the following property may be exempted under subsection 522(b)(1):
   (1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . .

4. Budd's valuation was based upon two sales of comparable properties in the amounts of $87,000 and $93,000.

existing balances of $62,500 and $13,500. When called as a witness by Diamond, the debtor stated that he and a partner, Norman Wnuk, had been sued by Diamond in state court, that an agreement was reached whereby he and Wnuk each agreed to pay half of a $7,570.00 debt owed to Diamond and entered into a stipulated judgment to that effect on June 19, 1981. The debtor acknowledged that in June, 1981, he told Diamond that his property had a value of $95,500. Further evidence revealed that the property was purchased by the debtor on December 3, 1979 for $87,900. Thereafter, the debtor, a home builder and remodeler by trade, finished the basement of the property at a cost of $500.00 for materials and planted $500.00 worth of shrubs. An appraiser for the defendant valued the property at $95,000, based primarily upon three comparable sales of $95,000, $88,500 and $92,200.

### III.

Diamond first contends that the debtor is barred from avoiding its lien under § 522(f) because the complaint of the debtor was filed subsequent to the closing of the case. In support of its position, Diamond relies upon *In re Porter*, 11 B.R. 578, 7 B.C.D. 959 (Bkrtcy., W.D.Okla.1981); *In re Krahn*, 10 B.R. 770, 7 B.C.D. 767 (Bkrtcy., E.D.Wis. 1980); and *In re Adkins*, 7 B.R. 325, 6 B.C.D. 997 (Bkrtcy., S.D.Cal.1980). These cases hold that while § 522(f) does not state when an action may be brought to avoid a lien, § 524(c) of the BRA, which requires reaffirmations to be made before the granting of a discharge, impliedly sets a time limit on such actions. After the granting of a discharge the debtor can no longer negotiate with his creditors to reaffirm his obligations on liened property. Further, these cases conclude that there must be some finality to bankruptcy proceedings.

■ The position taken by these courts has been rejected by other courts as being neither supported by explicit statutory language nor consistent with the concept of a

debtor being able to maintain his exemption rights so necessary to a fresh start. *See In re Newton*, 15 B.R. 640, 8 B.C.D. 514 (Bkrtcy., W.D.N.Y.1981); *In re Baskins*, 14 B.R. 110, 8 B.C.D. 161 (Bkrtcy., E.D.N.C. 1981); *In re Swanson*, 13 B.R. 851, 8 B.C.D. 13 (Bkrtcy., D. Idaho 1981); *In re Gortmaker*, 14 B.R. 66, 8 B.C.D. 67 (Bkrtcy., D.S.D. 1981). In reaching these conclusions, the *Swanson* court stated:

> The right to avoid liens on exempt property under § 522(f) is a right granted to debtors under the Bankruptcy Reform Act of 1978 .... It is a personal right given to a debtor, independent of case administration. It is fundamentally no different than any other legal right available to an individual. Congress has not placed any statutory limitation on the exercise of the right and I know of no legal doctrine at common law or equity which would allow this court to create an arbitrary time limitation on the exercise of this legal right.

13 B.R. at 854, 8 B.C.D. at 14 (citations omitted). Absent statutory language to the contrary, I conclude that an action brought pursuant to § 522(f) to avoid a lien is not barred because it is brought after the closing of the case.[5] This does not mean that doctrines such as laches may not be available to a lienholder, but this proceeding does not present such an issue.

### IV.

■ Diamond argues that its lien was voluntarily placed on the debtor's property pursuant to a consensual agreement in the form of a consent judgment and, hence, is not a judicial lien. A judicial lien is defined in 11 U.S.C. § 101(27) as a lien obtained by "judgment, levy, sequestration, or other legal or equitable process or proceeding." Diamond's lien was created by the state court judgment, not by the consent of the debtor to the judgment. "[A] consent judgment fit[s] within the definition of 'judicial lien' in 11 U.S.C. § 101(27)." *In re Ashe*, 669 F.2d 105, 3 Bankr.L.Rep. (CCH) ¶ 68,559, at

5. Section 350(b) of the BRA states: "A case may be reopened in the court in which such

case was closed to administer assets, to accord relief to the debtor, or for other cause."

80,395 (3rd Cir., 1982). Diamond's argument that its lien is not avoidable because the debtor agreed to a stipulated judgment must be rejected.

## V.

Diamond contends that, based upon the value of the property, its lien does not impair the debtor's exemption. The first and second mortgages on the property amount to $76,000.00, and the debtor claimed $7,000.00 of the property exempt in his amended B–4 schedules, pursuant to § 522(d)(1).[6] If, as the debtor urges, the value of the entire property is $90,000, no additional equity exists in the property to which the lien could attach $(90,000 - 76,000 = 14,000 \div 2 = 7,000 - 7,000 = 0)$. However, if Diamond's valuation of $95,000 is used, the remaining equity would satisfy $2,500 of Diamond's $3,875.00 lien $(95,000 - 76,000 = 19,000 \div 2 = 9,500 - 7,000 = 2,500)$.

■ Based upon the testimony received from the parties, I conclude that the fair market value of the property on July 14, 1981 was $92,000.00.[7] I arrive at this conclusion based upon the original purchase price of the house in 1979 ($87,900.00), sums thereafter expended for its improvement ($1,000.00), the labor supplied by the debtor, and the statements of the appraisers. The debtor's admission that he told Diamond the property was worth $95,500.00 during the state court proceedings is not binding on him in this matter. Diamond's valuation figure, $95,000.00, is not accepted because it appears to reflect the highest sale price of the three claimed comparable properties in the area.[8] There was insufficient evidence as to why the debtor's property would sell at the highest price received for like property, and I have valued the property more in keeping with the average prices received for comparable properties.

## VI.

■ Lastly, Diamond claims that the debtor should be estopped from avoidance of the lien because he allegedly made representations which Diamond relied upon in releasing the debtor's partner as co-obligor of the debt. Section 522(f) specifically provides that the right to avoid liens impairing an exemption cannot be waived.[9] If waiver is forbidden, it is difficult to see when estoppel[10] may be allowed. Furthermore, virtually no testimony was offered as to the negotiations between the parties prior to entry of the state court judgment. Diamond's estoppel argument is unavailing.

## VII.

The value of the debtor's property having been found to be $92,000.00, Diamond's lien is avoided to the extent of any amount in excess of $1,000.00.

---

6. See note 2 supra.

7. Under § 522(a)(2) "value" means fair market value as of the date of the filing of the petition. See In re Nellis, 12 B.R. 770 (Bkrtcy., D.Conn. 1981), aff'd mem., No. H–81–656 (D.Ct., D.Conn.1982).

8. This valuation was also made as of February 26, 1982, not as of the determinative date, July 14, 1981.

9. See note 1 supra.

10. "There are two essential elements to an estoppel; the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done." Breen v. Aetna Casualty & Surety Co., 153 Conn. 633, 643, 220 A.2d 254, 259 (1966).