### In the Matter of Gary Lee NEWMAN, Debtor.

### Thomas L. WILLIAMS, trustee in bankruptcy, Plaintiff,

### v.

### E.A. MARTIN MACHINERY CO., Defendant.

Bankruptcy No. 85–00710–SW.
Adv. No. 85–0660–SW.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

April 3, 1986.

Thomas L. Williams, Joplin, Mo., for plaintiff.

William L. Mauck, Springfield, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SUM OF $20,000 PLUS INTEREST FROM THE DEFENDANT

DENNIS J. STEWART, Chief Judge.

The plaintiff trustee in bankruptcy brings this action for the purpose of recovering what he contends to be a prohibited and unauthorized postpetition transfer pursuant to section 549(a) of the Bankruptcy Code. In his complaint, he alleges that:

"On March 11, 1985, the defendant [after the filing of the within petition for relief on March 4, 1985] acquired from the debtor by trade-in a Caterpillar 941 Loader, # 80H2160, which was property of the estate as defined in 11 U.S.C. section 541(a) and at the time of the transfer having a value of $20,000.00

"The transaction was not authorized by the Court nor any provision of the Bankruptcy Code ... (and) your trustee believes this defendant has disposed of the property."

In its answer to the complaint, the defendant submits the principal defense that "at the time of the alleged transfer it had no notice or actual knowledge whatsoever of the commencement of a bankruptcy case by the Debtor, and ... it acted at all times in good faith, so that such transaction is exempt from avoidance pursuant to 11 U.S.C. section 542(c)." The defendant further states that "the 'value' sought from Defendant by Plaintiff is in fact embodied in a 'trade-in-allowance' on a certain piece of heavy equipment which was credited to

Debtor upon the purchase of a 'new' machine from Defendant, which 'new' machine is still in Debtor's possession and has a fair market value in excess of the liens thereon so that the 'value' Plaintiff alleges Defendant received is in fact in the hands of Debtor, and is directly subject to Plaintiff's claims therefor."

The issues joined by the pleadings came on before the bankruptcy court for hearing in Joplin, Missouri, on March 20, 1986, whereupon the plaintiff appeared personally and as his own counsel and the defendant appeared by William L. Mauck, Esquire, its counsel. The evidence which was then adduced demonstrated that the debtor Gary Lee Newman, some time before the filing of the within bankruptcy case, purchased a new 953 loader for a purchase price of $77,000; that, at the time he purchased the loader, he was not yet married to Sandra Newman but was living with her; that, after the filing of the bankruptcy petition on March 4, 1985, he transferred the loader in question on March 11, 1985, to the defendant for $20,000 in credit on new merchandise then being purchased by him; that the defendant, at the time of the transaction, did not know that the debtors had filed the within bankruptcy petition nor was the defendant aware that the debtors at the time were in dire financial straits; that all the credit of $20,000 was applied on the purchase of new chattels and was not applied against the old preexisting debt; that, after the trade-in of the 953 loader, it was resold by the defendant for the sum of $13,500; and that, in a separate matter, the trustee formerly entered into a compromise and settlement with the debtors of their potential liability to the estate in bankruptcy.

■ Under the governing provisions of section 549(a) of the Bankruptcy Code, the trustee in bankruptcy is obligated to avoid any and all postpetition transfers which are "not authorized under this title or by the court." According to the evidence adduced at trial, the facts of this case fit squarely into that section. The transfer was postpetition; it was not authorized by this title—title 11 of the United States Code—or by the court. The defendant suggests that the transfer is unavoidable under the provisions of section 542(c) of the Bankruptcy Code. That section provides that:

> "an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith ... to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title had not been commenced."

But the letter of that statute—and the legislative history under it [1]—make it clear that it is not intended to apply to the debtor's own transfers, but rather only to an agent of the debtor who makes a payment in the debtor's behalf.[2] It is thus not applicable to the action at bar, in which the prohibited transfer is clearly shown to have been made by the debtor.

■ It seems also to be the contention of the defendant that the fact that the debtor received contemporaneous new value for the transfer exempts it from voidability, just as is the case with an otherwise prohibited preferential transfer under section 547 of the Bankruptcy Code. In this district, however, our district court rejected such a contention in *Matter of Isis Foods, Inc.*, 37 B.R. 334, 336 (W.D.Mo.1984), reversing the bankruptcy court decision which had declined to avoid a postpetition transfer on the basis that contemporaneous

---

1. See House Report No. 95–595, 95th Cong., 1st Sess. 369 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 84 (1978), to the effect that "(t)his subsection codifies the result of Bank of Marin v. England, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966)." In the *Bank of Marin* case, the transferor was an entity other than the debtor, i.e., a bank on which the debtor had written

a check. And it would seem that the debtor himself could not qualify under section 542(c) as "an entity that has neither actual notice nor actual knowledge of the commencement of the case."

2. See note 1, *supra*.

value therefor had been given by the transferee.[3] This contention—or implied contention, whichever it is—must therefore be rejected.

■ It is finally contended that the prior compromise and settlement of the estate's potential claims against the debtor somehow acts to release the transferee in this action—that the property transferred must, in view of the prior compromise and settlement, be regarded as the portion of the debtor's property which the trustee agreed not to consider property of the estate. But the prior compromise and settlement did not purport in any manner to release any claim which the trustee might have against the defendant in the action at bar. And the governing statute specifically provides that the trustee may recover a transfer avoidable under section 549, *supra*, from the transferee. See section 550(a) of the Bankruptcy Code. Accordingly, this defense must be rejected. The plain letter of section 549(a) and that of section 550(a) require recovery by the trustee, "for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property."

■ According to the evidence, the defendant no longer has the property in question, having traded or sold it for the sum of $13,500. The fact that the property is no longer in the custody of the initial transferee does not prohibit recovery from that transferee. Under section 550(a), *supra*, the trustee may recover from "the initial transferee" or "any immediate or mediate transferee of such initial transferee." With respect to the latter category of transferees—immediate or mediate transferees of the initial transferee—the giving of value, "including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voida-

bility of the transfer avoided" is a sufficient defense under section 550(b)(1). But that defense is not applicable to an "initial transferee."

■ Accordingly, the lone issue which remains for resolution is the value of the property, the equivalent of which is to be turned over to the trustee. The trustee claims the $20,000 in value which was credited by the transferee against the existing account of the debtor with it. The defendant claims that the actual value of the chattel is more likely represented by the $13,500 for which it was subsequently traded or sold by it. In this regard, it must be observed that a recent decision of the district court has held that "the crediting of debtor's account was (not) an admission of the value of the goods received." *Kidder Skis International v. Thomas L. Williams, trustee,* 60 B.R. 808 (W.D.Mo.1985). Thus, where there was other evidence that "the goods had declined substantially in value between the date they were initially ordered and purchased by the debtor and the date at which they were retransferred to Kidder," the district court concluded that there could be no warranted finding that the goods had the value which the defendant attributed to them at the time of the transfer.

In that action, however, the district court concluded that the act of crediting the account of the debtor or of purchasing the chattels could not necessarily be concluded to be an admission of the value thereof. "After diligent research, the Court is unable to locate any legal authority either for or against the proposition that such an act amounts to a judicial admission." Treated as an extrajudicial admission, which it is, however, it is ordinarily regarded, in the absence of any evidence that the purchase

3. "(T)he bankruptcy court looked to section 547(c)(2) to support its conclusion that payments made within forty-five days of delivery are reasonably contemporaneous and not avoidable under section 549 regardless of an intervening petition in bankruptcy. This application of a defense under section 547 to a claim under section 549 is incorrect since section 547 governs the avoidability of *pre*petition transfers whereas section 549 governs the avoidability of *post*petition transfers.... Section 549 contains its own exceptions in subsections (b) and (c), which have been described as 'very narrow' exceptions." 37 B.R. at 336, 337. Neither subsection (b) nor subsection (c) is applicable to the action at bar.

price was artificially inflated, as controlling. The traditional authorities clearly regard an offer to purchase property at a certain value as an admission, not only that the property had value, but of the value which it had at the time of the offer. "If one of the parties to the present action has himself offered to buy or sell the land (or other property) in question, or other similar neighboring land, evidence of this offer may be offered against (not for) him as an admission." McCormick on Damages section 46. "(T)he offer to purchase the ... property was properly admitted as evidence not only that the claims had some value, but also as evidence of what the value was." *Erceg v. Fairbanks Exploration Co.*, 95 F.2d 850, 855 (9th Cir.1938). The same rule is followed in the bankruptcy context with respect to the crediting of the debtor's account, in respect to which, unless the evidence is clear to the effect that the value credited was artificially inflated or deflated [4], is ordinarily regarded by the authorities as the controlling element. "(W)hen the evidence as to actual value is conflicting, it has been held not excessive to permit recovery on the basis of the amount credited to the debtor by the transferee." 4 Collier on Bankruptcy para. 547.55, p. 547–190 (15th ed. 1985). To date, a contrary result has been reached only when "a transferee has credited the debtor's account with an amount far in excess of the actual value of the property, and such val-

ue is shown by a *stipulation of the parties* to be a lesser sum." *Id.* (Emphasis added.) But, in the action at bar, the credited price of $20,000 is the only persuasive evidence of the value of the property at the time of the forbidden transfer.[5]

As in *Kidder Skis International v. Thomas L. Williams, trustee, supra*, there is evidence that, subsequent to the date of the transfer from the debtor to the initial transferee, the property declined in value to $13,500. But the standard rule in respect of the value which is depreciated is that it should be turned over to the trustee. "Depreciation in the value of the property due to market fluctuations (or other causes) may support the bankruptcy court in ordering restitution of the value of the property at the time of the transfer." 4 Collier on Bankruptcy para. 550.02, pp. 550–5, 550–6 (15th ed. 1985). "(A) creditor who has disposed of the assets at sacrifice prices, which were not justified under the circumstances, may be surcharged therefor." 3 Collier on Bankruptcy para. 60.59, p. 1103–1104 (14th ed. 1977). And, in this action, there is no explanation of the reason why the $20,000 value of the property at the time of the transfer should have dropped to $13,500 by the time of the retransfer. In actions in which there has been "no proof of any ... disparity" between the bid price and actual value, it is the transferee who is held to have failed to

---

**4.** In the case which was relied upon by the district court in *Kidder Skis International v. Williams, supra,* the court held that artificial deflation of the purchase price should be ignored even when "(t)he majority of the witnesses testif(ied) that 50 per cent. of the invoice was the actual value." In that case, the transfer was regarded as fraudulent, in part, because of the deflation in the price of the goods, which "were bought ... at a sacrivice from the true value." *In re Denson,* 195 F. 857, 858, 859 (N.D.Ala.1912). In this action, however, there is no evidence of artificial inflation or deflation of the $20,000 value which was credited against the debtor's account with the transferee. The defendant requests this court to credit it with the amount by which the property decreased in value while it was in its possession. But the authorities indicate that the trustee is ordinarily to be granted the highest value of the property which occurs at or about the time of the transfer. "Depreciation in

the value of the property due to market fluctuations may support the bankruptcy court in order restitution of the value of the property at the time of the transfer. On the other hand, ... (o)ther circumstances may result in a recovery of the value of the property as of the date of the trustee's judgment such as where the debtor is deprived of lost profits due to theft of property by a transferee who subsequently converts the property." 4 Collier on Bankruptcy, para. 550.-02, pp. 550–6, n. 6 (15th ed. 1985). None of the published cases deprives the trustee because of depreciation which takes place after the date of the transfer.

**5.** Any evidence in the record which may serve to contradict the $20,000 value would argue for a higher, rather than a lower, value. For it is clear that the chattel had a value of $77,000 at the time of its purchase by the debtor.

sustain his burden. "Nor can it be assumed that the bid would exceed the value of the property. If the value was lower, Joange (the transferee) had ample opportunity to demonstrate the disparity." *Kravetz v. Joange Building Corp.*, 341 F.2d 561, 564 (2d Cir.1965).[6] For these reasons, this court believes itself to be compelled to enter judgment for the value of the property at the time of the prohibited postpetition transfer, which the evidence clearly shows to have been $20,000.[7]

For the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the plaintiff trustee in bankruptcy have and recover from the defendant the sum of $20,000 plus interest at the legal rate[8] from the date of the transfer, March 11, 1985.

**6.** It is true, ordinarily, that evidence of an unaccepted bid has little probative value on the issue of valuation of property. "It is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value." *United States v. Smith*, 355 F.2d 807, 811 (5th Cir.1966). The well-established exceptions to this rule occur when the testimony "sheds considerable light on the tenor of the market at the time of the sale," *United States v. Hart*, 312 F.2d 127, 130 (6th Cir.1963), or the bid is an admission by the party himself as to value. "(A)dmissions are actually against interest when made . . . (as in) the cases admitting the party's previous offers to buy or sell . . . at a different value than he now contends for." McCormick's Handbook of the Law of Evidence section 262, p. 630, n. 15 (2d ed. 1972). Thus, it seems that it can hardly be denied that, when the defendant in the action at bar argues that the chattel was worth significantly less than $20,000 on the date of transfer, his granting credits for that amount on that date should be admissible in evidence as tending to show the contrary.

**7.** This court deems it appropriate to relegate to an inglorious footnote the defendant's implied contention that the transferred property was in fact property held in a tenancy by the entirety by the debtor and his wife and therefore was not property of the estate. It is true that, under the rule of *Matter of Anderson*, 12 B.R. 483 (Bkrtcy.W.D.Mo.1981), property held in a tenancy by the entirety is not property of the bankruptcy estate when only one spouse, as in the case at bar, is a title 11 debtor. It is also true, however, that, at the time the 941 loader was purchased, the debtor and Sandra McWilliams, who later became his wife, were not married. Thus, there could have been no tenancy by the

entirety at that time, for such tenancy, as a matter of definition, can exist only between spouses. "A tenancy by the entirety is an estate that can exist only between husband and wife, and it is founded upon the legal fiction that husband and wife hold entirety property as one person." *State ex rel. State Hwy Com'n v. Morganstein*, 649 S.W.2d 485, 488 (Mo.App.1983). There is no evidence in this action that, at the time, the loader was held in a joint tenancy or tenancy in common, or that it was anything but the separate property of the debtor. A tenancy by the entirety may be created by conveyance in Missouri. "Contrary to the common law, Missouri recognizes entirety estates in personalty and also allows such an estate to be created by a conveyance from a husband to himself and his wife." *Matter of Gervich*, 570 F.2d 247, 251 (8th Cir.1978). But there is no evidence of any such conveyance or even any intention prior to the date of bankruptcy that the property become entirety property. It is true that, when the 941 loader was transferred to the defendant on March 11, 1985, it was transferred as a trade-in on property which was promised to be paid for jointly by the debtor and his wife. But it is doubtful that such an act necessarily makes even the property traded for entirety property. See, e.g., *Matter of Davison*, 738 F.2d 931 (8th Cir.1984). And it *could* not make the 941 loader entirety property when that loader had already become property of the estate and the debtor could not lawfully transfer it.

**8.** "(T)he bankruptcy court should exercise its equitable powers to award the trustee interest and costs when appropriate." 4 Collier on Bankruptcy para. 550.02, p. 550–4 (15th ed. 1985). The legal rate is 9% per annum. See section 408.040 RSMo.