In the Matter of Bobby Lee BURNS and Clara Maxine Burns, Debtors.

Charles Elliott RUBIN, Plaintiff,

v.

Bobby Lee BURNS and Clara Maxine Burns, Defendants.

Bankruptcy No. 85–0350–SW–W.
Adv. No. 86–0319–SJ–W.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Oct. 28, 1986.

Roger M. Driskill, Richmond, for plaintiff.

Gary R. Bradley of the firm Bradley, Langdon & Bradley, Lexington, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING THE PLAINTIFF'S COMPLAINT FOR RELIEF

DENNIS J. STEWART, Chief Judge.

This action for sale free and clear of liens of certain property in which the debtors have an interest came on before the bankruptcy court for trial of its merits on October 20, 1986, whereupon plaintiff appeared by Roger Driskill, Esquire, his counsel, and the defendants appeared personally and by their counsel, Gary R. Bradley, Esquire, of the law firm of Bradley, Langdon and Bradley. The evidence which was then adduced demonstrated that the debtors are by will of a decedent the life tenants of a certain 231 acres of real property; that the debtors' children have the

remainder interest; that the debtors claim a homestead interest in the property under the provisions of section 513.475 RSMo; that they have presented expert testimony to the effect that the fair market value of their life tenancy is less than the homestead interest, $8,000, which may be claimed as exempt[1]; that the property itself, however, has a value which has been estimated as ranging from $300 per acre to $350 per acre,[2] which would make the value of the entire 231 acres range from $69,300 to $80,850; that the expert witnesses who value the life tenancy at less than $8,000 (in the range of $3,000–$5,000) base their estimates on the current market and rental value of like property and on the probable life span of the debtors, especially Mr. Burns, which may be foreshortened by illness[3]; and that their valuations of the life tenancy are based on fair market value.[4]

Based on these material facts, it is the trustee's initial contention that he should be permitted, under the provisions of section 363(h) of the Bankruptcy Code, to sell the property in its totality and to keep for himself and the bankruptcy estate a sum attributable to the value of the life estate and pay out the value of the remainder to the remaindermen. He refers to so much of section 363(h), *supra*, as provides for sale of "both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety ..." It is plain, however, that life tenants and remaindermen are not co-owners having undivided interests who are intended to be the subjects of section 363(h), *supra*. Consequently, the trustee's patently unlawful prayer for relief in this regard must be denied.

The trustee next asserts that the life estate, being an interest of the debtors in property within the meaning of section 541 of the Bankruptcy Code, belongs to the bankruptcy estate. The debtors, on the other hand, do not deny that the property is that of the estate, but they contend that they are entitled to claim it all as their exempt homestead property under section 513.475, *supra*, which places a limit of $8,000 per family on claims of exemption in homestead property. There is no question made in the pleadings or by the evidence but that the debtors do in fact live on the property and make it their home and that they intend to live there for the foreseeable future.

The trustee, however, whose sole evidence on the issue of value of the 231 acres is the testimony of an appraiser to the effect that the land has a current fair market value of $80,850—and who states that he has no opinion of the fair market value of the life estate[5]—believes that the value of the life estate should be calculated on the basis of a Missouri statute which provides a method for commuting a life estate based upon the value of the life estate and the remainder of the entire value of the property. More of this contention will be mentioned below. First, however, it must be mentioned that the trustee purports to offer some evidence of the fair market value of the property in the form of testimony of a potential renter of the property to the effect that, over a five year

---

1. The videotape testimony of David Hatfield, a farmer and a real estate broker, aged 58, who had been in the real estate business for some 6 years, was presented to the effect that the life estate (considering the depressed farm prices and the individual circumstances of the debtors) was worth $3000 to $5000 in fair market value. The testimony of a farmer, George Noble, was presented to the effect that the rental value of the land would be lower than $10 per acre. Plaintiff chiefly relied upon the videotape transcript of the testimony of Gordon Shanks, a real estate broker of some 15 years experience, that the entire 231–acre fee had a value of $350 per acre. On cross-examination, Mr. Shanks stated

that he had no opinion of the value of the life estate.

2. Mr. Hatfield testified that the fee might have a value of $300 per acre; Mr. Shanks, see note 1, *supra*, testified that it had a value of $350 per acre.

3. See note 1, *supra*.

4. As was the opinion of value expressed by the Plaintiff's witness. See note 1, *supra*.

5. See note 1, *supra*.

period, some $35 per acre would be the rental value of the property. Thus, over the ten-year period which the trustee contends to be the prospective expectancy of the life estate (as will be further developed below), the rental value of the 231 acre tract would be about $16,170—more than twice the $8,000 limitation on the homestead exemption.

■ This court, however, rejects the evidentiary postulate for this particular calculation of the value of the life estate. Generally speaking, offers to purchase or rent property are not admissible in evidence in support of a contention of the fair market value of the property. "It is well settled that a mere offer, unaccepted, to buy or sell is inadmissible to establish market value." *United States v. Smith*, 355 F.2d 807, 811 (5th Cir.1966). See also *Matter of Newman*, 59 B.R. 670, 675, n. 6 (Bkrtcy.W. D.Mo.1986). No reason appears in this action to deviate or depart from the general rule. This contention is therefore rejected.

But this does not exhaust the ingenious contentions of the trustee.

■ The trustee contends that the value of the life estate should be calculated according to a process described in section 442.530 RSMo for measuring the cash value of a life estate when the holder thereof is entitled to have that value commuted to cash. By means of this process, the value of the debtors' life estate would be determined to be 6% of the total value of the property times each year of the life tenants' life expectancies as determined from a standardized table.[6] So determined, the debtors' ages, 52 and 53 respectively, would yield an expectancy of about 10 years.[7] Calculated on the basis of $80,850 which, as observed above, the trustee contends to be the value of the property, the value of the life estate would be $48,510,[8] an amount greatly in excess of the $8,000 limitation on the homestead exemption.

■ It is not the Missouri statute which governs the value of a life estate, however, for the purpose of determining the value of an exemption in bankruptcy proceedings. The governing case decisions uniformly hold that the value of exemptions is to be determined according to fair market value.[9] On that issue, only the debtors have adduced evidence and it is unanimously to the effect that the fair market value of the life estate is less than the $8,000 limit on a homestead exemption. This is the value which the court has no alternative but to accept in making this determination. If the trustee's theory as to the determination of value were to be indulged, the trustee would be able to command much more for the life estate than he could ever obtain for it on the open market and thereby would compel the debtors to purchase their own homestead at far more than market value. This is particularly so in this case, in which any reasonable potential purchaser of the property would be almost certain to observe that, because of the uncertain life expectancies of the life tenants and the current nonproductivity of the acreage in terms of profit, great risk would be involved in purchasing the life estate. The trustee's calculus, which would ignore these elements to the great detriment of the debtors, violates the paramount principle governing the construction and application of federal bankruptcy exemptions—

---

6. "(T)he sum shall be estimated according to the then value of an annuity of six per cent on the principal sum during the probable life of such person, according to the following table, showing the present value, on the basis of six percent interest, of an annuity of one dollar, according to the Carlisle tables of mortality payable at the end of every year that a person of a given age may be living for the ages therein stated:

\* \* \*

| Age | Present Value |
|---|---|
| 52 | 10.208 |
| 53 | 9.998." |

Section 442.530 RSMo.

7. See note 6, *supra*.

8. Six percent of $80,850 would be $4,851.00. Multiplied by 10, it would be $48,510. See section 442.550 RSMo.

9. "Under section 522(a)(2) 'value' means fair market value as of the date of the filing of the petition." *Matter of Holyst*, 19 B.R. 14, 17 (Bkrtcy.D.Conn.1982), and cases there cited. The rule appears to be the same under Missouri law governing valuation of homesteads appears to be the same. See section 513.480 RSMo.

that they are for the benefit of the debtors and are to be liberally construed in their favor. It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED AND DECREED that the plaintiff's complaint for relief be, and it is hereby, denied.