**In re Howard C. HANSEN and Arlene E. Hansen, Debtors.**

**Richard E. BARBER, Trustee, Plaintiff,**

**v.**

**Howard C. HANSEN and Arlene E. Hansen, Debtor/Defendants,**
**and**

**Sharon Ann Kerchner and Karen Kay Souders, Defendants.**

**Bankruptcy No. 87–81180.**

**Adv. No. 88–8132.**

United States Bankruptcy Court, C.D. Illinois.

Feb. 1, 1989.

Gregg N. Grimsley, Peoria, Ill., for Trustee.

Alan Blackwood, Moline, Ill., for defendants.

## OPINION AND ORDER

**WILLIAM V. ALTENBERGER, Bankruptcy Judge.**

This is the Trustee's action to set aside as a fraudulent conveyance the Debtors' conveyance of an 80 acre tract of real estate to their two daughters. The real estate is used by the Debtors as their residence. The only issue is whether the Debtors were insolvent at the time of the transfer, or became insolvent as a result of the transfer.

At the time of the conveyance in February of 1986, the Debtors had total liabilities of $241,497.58, and if their financial statement is accurate, assets of $270,294.07, with a net worth of $28,796.49. However, the Trustee contends two assets, a 159 acre farm and the 80 acre tract, were overvalued, and the Debtors had a negative net worth.

On February 19, 1986, the Debtors conveyed the 80 acre homestead to their daughters, reserving life estates in each Debtor. The Debtors were then 82 and 74 years old. On their financial statement of that date they valued the life estates at $44,426.00.

In March of 1986, the Debtors had the 159 acre tract appraised at $1250.00 per acre, or $198,750.00. In July of 1986, the Debtors agreed to convey the tract to one of their creditors, with the tract to be sold and the debt to be reduced. The creditor obtained an appraisal of the tract as of July 15, 1986, which valued the tract at $925.00 per acre or $147,075.00. In December of 1986, the creditor, through an arms length sale, sold the tract to a third party for $150,000.00.

In May of 1987, the Debtors filed their Chapter 7 proceeding and listed the life estate interests in the 80 acre tract as having a value of $15,000.00 with a mortgage of $8,000.00 against the 80 acre tract. In September of 1987, the 80 acre tract was appraised at $91,600.00.

The first issue before the Court is the value of the 159 acre tract on February 19, 1986. The Court finds it to be $150,000.00. The best evidence of the value of an asset is the price it brings at an arms length sale. The general principles applicable here are set forth in 29 AM JUR.2d Evidence, Sections 395 and 396. Section 395 regarding the purchase or sale price of property provides, in part:

Evidence of the price at which real property, the value of which is an issue, was bought bona fide at a voluntary sale at some time near the time as of which value is to be determined is competent evidence of its value and is one of the best and most satisfactory standards of estimating actual value, although it is not in any case conclusive of value.

In this case, the arms length sale brought $150,000.00.

Section 396, concerning the time of purchase or sale provides:

When evidence of the price at which property has previously sold or been purchased is sought to be introduced in proof of value, it should be made to appear that the sale or purchase in question was not at a time too far remote from the time as of which the value is to be fixed. Evidence of the price paid for real property, or the price for which it

was sold, is admissible where the sale or purchase is so recent that conditions affecting the value are substantially unchanged; but where the sale or purchase was made at a remote time, or conditions affecting the value have since materially changed, evidence of the sale or purchase price is inadmissible. However, evidence of the value of land is not confined to the same day on which it was purchased or sold, but may include other periods before and after such purchase or sale. As to the remoteness of the time of purchase or sale of property, much is left to the discretion of the trial court.

The fact that the sale in this case occurred approximately ten months after the conveyance does not make it too remote to use as evidence. The Debtors' own appraiser testified that in March of 1986, when he made his appraisal, it was difficult to find comparables and that he had used comparables from April of 1985, ten months prior to the conveyance, and December of 1985. He also testified that farm values in the area where the 159 acre tract is located did not change much in 1986. This stability is important. *See City of Houston v. Wisnoski*, 460 S.W.2d 488 (Tex.Civ.App.1970). As the market was stable and as the Debtors' appraiser had to go back ten months to find a comparable, using the creditor's sale, which occurred ten months after February 19, 1986, to determine the value of the 159 acre tract, is appropriate.

The second issue before the Court is the value of the retained life estates in the 80 acre tract. As a general rule, while federal actuarial tables published by the Treasury do not have the force of law, their use in valuing life estates is well-accepted. *See Harris v. United States*, 764 F.2d 1126 (5th Cir.1985); *Matter of Reardon*, 10 B.R. 697 (Bkrtcy.D.Conn.1981). However, use of the tables was rejected by the court in *Matter of Burns*, 73 B.R. 13 (Bkrtcy.W.D. Mo.1986). There, the debtors, aged 53 and 52, claimed their life estate in farm property as exempt. The debtors introduced expert testimony that the value of their life estate was less than their homestead exemption. The Trustee, whose appraiser

testified the value of the real estate was $80,850.00 but not to the value of the life estate, contended that the value of the life estate should be calculated according to state actuarial tables. In rejecting this position, the court stated:

> The trustee contends that the value of the life estate should be calculated according to a process described in section 442.530 RSMo for measuring the cash value of a life estate when the holder thereof is entitled to have that value commuted to cash. By means of this process, the value of the debtors' life estate would be determined to be 6% of the total value of the property times each year of the life tenants' life expectancies as determined from a standardized table. So determined, the debtors' ages, 52 and 53 respectively, would yield an expectancy of about 10 years. Calculated on the basis of $80,850 which, as observed above, the trustee contends to be the value of the property, the value of the life estate would be $48,510, an amount greatly in excess of the $8,000 limitation on the homestead exemption.

> It is not the Missouri statute which governs the value of a life estate, however, for the purpose of determining the value of an exemption in bankruptcy proceedings. The governing case decisions uniformly hold that the value of exemptions is to be determined according to fair market value. On that issue, only the debtors have adduced evidence and it is unanimously to the effect that the fair market value of the life estate is less than the $8,000 limit on a homestead exemption. This is the value which the court has no alternative but to accept in making this determination. If the trustee's theory as to the determination of value were to be indulged, the trustee would be able to command much more for the life estate than he could ever obtain for it on the open market and thereby would compel the debtors to purchase their own homestead at far more than market value. *This is particularly so in this case, in which any reasonable potential purchaser of the property would be almost certain to observe that,*

*because of the uncertain life expectancies of the life tenants and the current nonproductivity of the acreage in terms of profit, great risk would be involved in purchasing the life estate.* The trustee's calculus, which would ignore these elements to the great detriment of the debtors, violates the paramount principle governing the construction and application of federal bankruptcy exemptions—that they are for the benefit of the debtors and are to be liberally construed in their favor. (Emphasis added)

The Trustee introduced no evidence of value of the life estates other than a copy of the Debtors' bankruptcy schedules, which list the value of the life estates at $15,000.00. The Trustee's appraiser testified the 80 acre tract was worth $91,600.00. The Debtors introduced the expert testimony of an actuary that the value of their life estate on February 19, 1986, was $44,426.00.

 This Court cannot ignore the Debtors' ages and the uncertaincies associated with their life expectancies which would adversely affect the price any reasonable purchaser would offer for the life estate interests in the 80 acre tract. Such a purchaser would recognize that actuarial valuations are based on estimated life expectancies, which may or may not be fulfilled. Any offer to purchase the life estate interests would reflect the risk that with two people of advanced age, the life estates could terminate shortly after acquisition. If an offer were obtained, it would be extremely low. Nor can the Court ignore the Debtors' value of the life estates at $15,000.00 when they filed their bankruptcy slightly more than one year after the conveyance. This value constitutes an admission that the life estates were worth only $15,000.00 at that time. *See* Russell, *Bankruptcy Evidence Manual,* Section 201.9; *In re Cobb,* 56 B.R. 440 (Bkrtcy.N. D.Ill.1985); *Matter of Fordson Engineering Corp.,* 25 B.R. 506 (Bkrtcy.E.D.Mich. 1982). Such an admission is not conclusive, however, and it could have been contradicted or explained at the trial. *In re Cobb, supra.* The Debtors here offered no explanation whatever. Their rejection of the actuarial method for valuing the life estate for exemption purposes severely undercuts their position. Therefore, this Court finds that the life estates had a minimal value on February 19, 1986, certainly in no event greater than the $15,000.00 value placed on them for exemption purposes.

These valuations lead the Court to conclude that on February 19, 1986, after the conveyance, the Debtors' assets totalled $192,118.07; their liabilities totaled $241,497.58; and their net worth was a negative $49,379.51; and that the conveyance caused the Debtors to become insolvent.[1]

What the Debtors attempted to do in this case was to transfer to their daughters real

[1] DEBTORS' FINANCIAL STATEMENT AS OF FEBRUARY 19, 1986.

| ASSETS | AS SHOWN BY DEBTORS' EXHIBIT # 1 | ADJUSTED TO SHOW VALUES PRIOR TO TIME OF TRANSFER AS DETERMINED BY THE COURT | ADJUSTED TO SHOW VALUES AFTER TRANSFER AS DETERMINED BY THE COURT |
|---|---|---|---|
| Farm Property (159 Acres) | $198,750.00 | $150,000.00 | $150,000.00 |
| Funds in Bank of Tampico | 7,707.73 | 7,707.73 | 7,707.73 |
| Tractor and mower (3010 John Deere) | 1,500.00 | 1,500.00 | 1,500.00 |
| Miscellaneous Equipment (Actual price received from sale June, 1986) | 8,045.00 | 8,045.00 | 8,045.00 |
| TransAmerica Insurance (Cash Value) | 1,000.00 | 1,000.00 | 1,000.00 |
| 1979 Oldsmobile Auto | 2,200.00 | 2,200.00 | 2,200.00 |

estate with a value of $91,600.00 to the exclusion of their creditors, while retaining the benefit of the real estate through the reservation of life estates. They attempted to have their life estates determined to be fully exempt and then to inflate that value to protect their daughters' remainder interest.

IT IS, THEREFORE ORDERED:

1. That the transfer to the Defendants, SHARON ANN KERCHNER and KAREN KAY SOUDERS, of the 80 acre tract by the Debtors, be and the same is hereby avoided and declared null and void.

2. That the Defendants, SHARON ANN KERCHNER and KAREN KAY SOUDERS, transfer and deliver to the Plaintiff the 80 acre tract of real estate transferred to them by the Debtors.

This Opinion and Order is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

DEBTORS' FINANCIAL STATEMENT AS OF FEBRUARY 19, 1986.

| ASSETS | AS SHOWN BY DEBTORS' EXHIBIT #1 | ADJUSTED TO SHOW VALUES PRIOR TO TIME OF TRANSFER AS DETERMINED BY THE COURT | ADJUSTED TO SHOW VALUES AFTER TRANSFER AS DETERMINED BY THE COURT |
|---|---|---|---|
| 1974 Chevy Pick-up Truck | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| Value of Life Estate | 44,426.00 | 91,600.00* | 15,000.00 |
| Federal Land Bank Stock | 800.00 | 800.00 | 800.00 |
| Personalty: | | | |
| Wearing apparel | 200.00 | 200.00 | 200.00 |
| Jewelry | 50.00 | 50.00 | 50.00 |
| Household goods | 1,155.00 | 1,155.00 | 1,155.00 |
| Farm Tools | 400.00 | 400.00 | 400.00 |
| Receivables: | | | |
| Grain Storage Rent | 800.00 | 800.00 | 800.00 |
| ASA Payment | 2,260.34 | 2,260.34 | 2,260.34 |
| TOTAL | $270,294.07 | $268,718.07 | $192,118.07 |
| LIABILITIES: | | | |
| Citizens First Nat'l. Bk. | $201,502.29 | $201,502.29 | $201,502.29 |
| CNA | 22,595.00 | 22,595.00 | 22,595.00 |
| Fed.Land Bk. (Mortgage) | 8,000.00 | 8,000.00 | 8,000.00 |
| Ferry Morse Seed Co. | 3,877.70 | 3,877.70 | 3,877.70 |
| Mineral Oil Company | 800.00 | 800.00 | 800.00 |
| First Card | 922.59 | 922.59 | 922.59 |
| Annawan Implement Co. | 1,200.00 | 1,200.00 | 1,200.00 |
| Taxes | 2,600.00 | 2,600.00 | 2,600.00 |
| TOTAL | $241,497.58 | $241,497.58 | $241,497.58 |
| NET WORTH AS OF 2/19/86 | $28,796.49 | $27,220.49 | [$49,379.51] |