**In re Otis Lee BOYER and Nelda Evalyn Boyer, Debtors.**

**Bankruptcy No. 90–11923–7.**

United States Bankruptcy Court, D. Kansas.

June 5, 1992.

---

Edward J. Nazar of Redmond, Redmond & Nazar, Wichita, Kansas, for the trustee.

J. Michael Kennalley of Hershberger, Patterson, Jones & Roth, Wichita, Kan., for The Farm Credit Bank of Wichita.

Dennis V. Lacey of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for Thomas County Nat. Bank.

## MEMORANDUM OF DECISION

JOHN T. FLANNAGAN, Bankruptcy Judge.

This is a contested matter before the Court on the trustee's Motion for Order Authorizing Distribution of Proceeds to Secured Creditors and the Objection of the Farm Credit Bank. Having heard the evidence at trial on February 10, 1992, and considered the briefs of the parties, the Court sustains the trustee's motion and overrules the Farm Credit Bank's objection for the reasons set out below.

The trustee appears by his attorney, Edward J. Nazar of Redmond, Redmond & Nazar, Wichita, Kansas. The Farm Credit Bank of Wichita (hereinafter referred to as the "FCB") appears by its attorney, J. Michael Kennalley of Hershberger, Patterson, Jones & Roth, Wichita, Kansas. Thomas County National Bank (hereinafter referred to as the "Bank") appears by its attorney, Dennis V. Lacey of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kansas.

The parties have stipulated in the pretrial order that the Court has jurisdiction over the parties and subject matter of the action; that venue in this district is proper; that all necessary and indispensable parties are joined; and that the Court may try this proceeding to final judgment. The Court makes the same findings independently of the stipulation.

The Chapter 7 debtors owned two contiguous tracts of Thomas County, Kansas, real estate—the Southwest Quarter of Section 11 and the North Half of Section 14, both in Township 10 South, Range 36 West of the 6th P.M. in Thomas County, Kansas. The Farm Credit Bank of Wichita held a first mortgage on the 160–acre quarter section. Elda Ryman and the Lorene Miller Estate held first mortgages on the 320–acre half section. Thomas County National Bank held a second mortgage on the 320–acre half section.

On February 20, 1991, the trustee filed a Motion and Notice of Intended Sale # 1. It proposed to sell real and personal property free and clear of liens which were to transfer to the sale proceeds. The certificate of mailing on the motion certified that notice was given to the FCB.

The Motion and Notice of Intended Sale # 1 proposed an auction sale on March 20, 1991, at 9:00 a.m. one-half mile west of Colby, Kansas. It contained the following recitations:

1. Notice is hereby given ... of the intended sale of all right, title, and interest of the Debtors in and to the following described real property, to wit:

   The Southwest Quarter of Section 11, and the North Half of Section 14, both in Township 10 South, Range 36 West

of the 6th P.M., of Thomas County, Kansas. . . .

6. The real property as hereinabove described will be sold to the highest bidder, and said real property will be sold in its present condition with no expressed or implied warranties, and the purchaser is to accept said property in its present condition.

7. The sale will be free and clear of all liens and encumbrances of record, and in the event of any mortgage or security interest in and to said property to be sold, the mortgage or security interest shall be transferred to the proceeds of sale. A significant benefit will be realized by any secured creditor to the extent of receipt of proceeds through distribution upon closing of this transaction.

8. The cost of sale shall include reasonable and necessary expenses allocated pursuant to the provisions of 11 U.S.C. § 506(c) on a pro rata basis to the extent of participation in the proceeds including, but not limited to, the following:

| | |
|---|---|
| Auctioneers Fee (5% of proceeds): | |
| Advertising Expenses: | $1,500.00 |
| Total Amount of Trustee's Fees Allowed Under 11 U.S.C. § 326: | |
| Trustee's Attorney Fees (estimated): | $ 600.00 |
| Title Insurance Expenses: | |
| Real Property Taxes: | |
| Personal Property Taxes: | |
| Postage & Photocopying Expenses: | $ 59.50 |
| Miscellaneous Expenses: | |

9. Objections to the sale of the real property and personal property, the payment of the auctioneer's fees, Trustee's fees, Trustee's attorney's fees and other administrative expenses should be made in writing to the Clerk of the U.S. Bankruptcy Court, 401 North Market, Wichita, Kansas, 67202, with a copy to the Trustee at the Trustee's address . . . on or before the 12th day of March, 1991, at 5:00 p.m. If no objections are made to the payment of the above and foregoing items, then the Court may enter an order approving said costs and disbursing the funds from the sale without further notice to all creditors. A hearing on any objections to the sale will be conducted in the United States Bankruptcy Court, 401 North Market, Wichita, Kansas, on the 14th day of March, 1991 at 9:00 a.m.

Neither the FCB nor any other party objected to the Motion and Notice of Intended Sale # 1. The Court granted the motion in open court on March 14, 1991, as reflected on the Courtroom Minute Sheet. The sale was held on March 20, 1991, and thereafter the trustee prepared and the Court signed a journal entry granting the trustee's motion for sale which was filed April 2, 1991.

Before the sale, the auctioneer prepared a Sale Bill for use in advertising the property. It was introduced into evidence as TCNB Exhibit # 1. It indicated, *inter alia*, the following:

LEGALS

Tract # 1

Southwest Quarter (SW/4) of section 11 Township 10 South Range 36 West of the 6th P.M.

Tract # 2

North Half (N/2) of Section 14 Township 10 South, Range 36 West of the 6th P.M.

Tract # 3

Combination of Tracts # 1 and # 2.

LOCATION

Located 12 miles south and 13 west of Colby, Kansas.

MANNER OF SALE

This land will be sold in individual and combination of tracts, whichever realizes the highest aggregate price.

This Sale Bill is consistent with the testimony that the real property was to be offered for sale initially in two separate tracts, the quarter section and the half section, and then offered for sale as one unit of three quarter sections—480 acres. The testimony established that the trustee reserved discretion to accept bids on Tracts

#1 and #2 if their combined total was higher than the bid on Tract #3. The testimony further revealed that the FCB received a copy of the sale bill; that its agent, A.J. Hurst, had talked to the auctioneer before the sale; and that Hurst knew how the sale would be conducted, not only by communicated information, but by the custom of the area. The FCB did not bid at the sale.

At the sale, John Jacobs and Allen Sager bid on the quarter section. The high bidder was John Jacobs with a bid of $43,200.00 or $270.00 per acre for the quarter. Allen Sager and John Cranston bid on the half section. Allen Sager was high bidder at $86,400.00 or $270.00 per acre for the half section. The auctioneer then offered the two separate tracts of real estate for sale as one 480–acre unit, as advertised in the Sale Bill. John Cranston and Sam Medford bid separately on the whole parcel of 480 acres. Sam Medford was the successful bidder at $147,600.00 or $307.50 per acre. The trustee accepted his $307.50 per acre bid.

On May 1, 1991, the trustee filed a motion requesting authority to distribute the sale proceeds to the mortgagees. The motion stated that both properties were sold as a unit for $147,600.00 ($307.50 per acre) after the trustee received separate auction bids of $43,200.00 for the quarter section ($270.00 per acre) and $147,600.00 for the half section (also $270.00 per acre). For purposes of distribution, the trustee proposed to allocate the costs and sale proceeds between the two properties on the basis of one-third to the quarter section and two-thirds to the half section.

The FCB objected to the trustee's allocation proposal. It claimed that the quarter section upon which it held a mortgage was "better" ground than the half section by virtue of its superior soil quality, productivity, and contour. At trial, the FCB produced an appraisal showing that the value of the quarter section was $57,252.00 ($357.83 per acre) and that the value of the half section was $91,793.00 ($286.85 per acre) on January 1, 1990, almost three months before trial.

At page 11 of the FCB's "Supplemental Memorandum" filed on March 12, 1992, FCB's counsel states: "FCB is not challenging the sale or the sale price obtained. The parties here are litigating only the method of distribution of the sale proceeds."

Notwithstanding this language, the FCB is asking the Court to substitute a pre-sale appraisal value for the actual sale price of the quarter section. It claims the trustee should attribute a price of $357.83 per acre to the land charged with its mortgage. This would result in the FCB recovering 38.41% of the proceeds ($57,252.00/$149,045.00) rather than 33.33% ($49,200.00/$147,600.00).

However, as the brief of Thomas County National Bank points out, once a sale has occurred, the actual consideration received is the best evidence of value for the property sold. See *In re The Two "S" Corp.*, 875 F.2d 240, 243 (9th Cir.1989); *In re Hansen*, 95 B.R. 586, 587 (Bankr.C.D.Ill. 1989). The sale of all the acres at $307.50 per acre establishes with finality that the quarter section represents one-third of the whole value and the half section two-thirds of the whole value, just as the quarter section and the half section are respectively one-third and two-thirds of the total acreage sold.

The FCB's lien could only attach to the sale proceeds of the 160 acres secured by its mortgage. To accept the FCB's position would mean in effect that when the Court approved the trustee's motion, it granted the FCB a lien on the proceeds of property not included in its mortgage. It would follow that the mortgage holders on the half section are entitled to less than the $307.50 per acre sale price. Since the sale fixes the per acre value of the land, there can be no justification for such a result.

The FCB had the opportunity to object to the sale and ask the Court to fix a minimum price per acre below which the property subject to its mortgage would not be sold. Such an "upset price" is used by courts to assure that property is not sold for less than it should reasonably bring at

auction. As a sophisticated lender with experience and expertise in the foreclosure and sale of real property upon which it holds mortgages, the FCB has not claimed it was unfamiliar with this well-known device or its opportunity to use it. Having failed to ask the Court for an upset price, the FCB must now be content with the sale price. The trustee's motion is sustained, and the FCB's objection is overruled.

The foregoing discussion shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.